**Chrissenda STRICKLAND, By and Through her Next Friend, Barbara Strickland CARPENTER, Plaintiff–Appellant,**

v.

**Kent TEGELER, M.D. and Northland Obstetrics & Gynecology, Inc., Defendants–Respondents.**

**No. WD 40248.**

Missouri Court of Appeals, Western District.

Feb. 28, 1989.

John H. Norton, Norton, Pollard & Norton, Inc., Kansas City, for plaintiff-appellant.

P. John Brady, Ted R. Osburn, Shughart, Thomson & Kilroy, Kansas City, for defendants-respondent(s).

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Barbara Carpenter brought this medical malpractice suit for injuries allegedly sus-

tained by her infant daughter, Chrissenda, during delivery. The jury returned a verdict in favor of the physician. On appeal, Carpenter contends the court erred in refusing to grant a new trial for the failure of a juror to reveal that she had two relatives who had congenital arm defects. Reversed and remanded.

Carpenter's counsel opened the voir dire of the jury panel with the admonition that it was very important for members of the panel to answer each question because because otherwise a case could be tried for several days only to have the judgment reversed on appeal because a panel member failed to answer a question. Counsel told the panel that if anyone thought they had failed to respond to a question they should later raise their hand and make that fact known.

Counsel advised the panel that this claim was predicated upon the failure of a physician to deliver a child in accordance with the recognized practice observed by obstetricians and as a result, Crissy had a permanently damaged right arm. Counsel further advised the panel that he would be using the term "immediate family" in his questioning, and that he included within this term not just family members, but also any close friends as well as relatives, stepbrothers and adopted relatives.

In response to questions propounded to the panel by Carpenter's counsel, various panel members mentioned spouses children, brothers, and sisters. In addition, several panel members answered questions which were applicable to grandmothers, uncles, close friends, aunts, mothers-in-law, sisters-in-law, and brothers-in-law. One panel member even answered a question that was applicable to the sister of her brother-in-law.

The attorney for the physician told the panel that the child had problems rotating her arm and moving it. He then inquired if any member of the panel or their immediate family had any limitation in motion of their arm or any other extremity. Receiving no response, he further inquired if anyone had any birth defects that inhibited their ability to walk or move their hands or arms. One panel member responded that he was born with a birth defect to his leg. Counsel further inquired if anyone or their immediate family had been born without a leg, or had any paralysis in any of their limbs. One panel member responded that their child was pigeontoed.

Helen Jones did not respond to any question during voir dire. She was selected to serve on the jury and was one of the nine jurors who signed a verdict in favor of the physician.

Subsequently, Carpenter's counsel filed a motion for new trial in which it was alleged that juror Jones had failed to reveal, and had intentionally concealed, the fact that she had relatives who had arm defects similar to Crissy. A hearing was held on the motion and juror Jones testified. Jones said that a nephew of her husband had an arm deformity with which he had been born. She stated she had been married 49 years and she gave the name of the nephew and the city in Louisiana where he lived. She also stated that the nephew was a supervisor of a plant that manufactures crossties, and that he lived a relatively normal life.

She stated that the nephew had a sister who had the same type of arm deformity although not quite as severe. She could recall the first name of the niece but could not recall her last name, but did remember that she lived in Tennessee.

Jones testified that the nephew was about 60 years of age and the niece approximately 50 years of age and that during the 49 years she had been in the family she had seen both of them "a lot of times." She said each had one arm which was smaller than the other and that each kept that arm to their side and that as far as she knew, each could raise their arm.

Jones testified that she did not recall a question during voir dire of whether any members of the immediate family had any type of limitations of motion. She stated that although she was not hard of hearing, she did not know if she heard the question even though she was listening carefully to the questions and was trying to absorb everything. Jones said she remembered a

question about anyone being born with a birth defect and the response of the man who had the leg problem.

Jones stated that she remembered the nephew and niece for the first time when the jury was deliberating but that she did not think of them at the beginning of the trial. She stated that the arm problem never bothered the nephew or niece when they were growing up and she had never heard any discussion about them in the family.

This case is governed by *Williams by Wilford v. Barnes Hospital*, 736 S.W.2d 33 (Mo. banc 1987). The court there pointed out that the right to a fair and impartial jury is a cornerstone of our judicial system. The court stated that it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions. The court further stated:

> We recognize both intentional and unintentional nondisclosure of information requested of a potential juror on voir dire. Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable. *Id.* at 36.

In *Williams* the nondisclosure involved a juror who was one of those who signed the verdict. That juror failed to disclose that he had settled a claim for personal injury. The juror said he did not recall the claim during voir dire but when he testified at the hearing on the motion for new trial he remembered the accident in detail. The court stated that under those circumstances the explanation that the juror "... forgot his personal injury claim 'unduly taxes our credulity.'" *Id.* 38[7].

The court in *Williams* stated that the determination of whether or not concealment on the part of a juror is intentional or unintentional is left to the sound discretion of the trial court and its ruling will only be disturbed upon a showing of an abuse of that discretion. *Id.* 36[3, 4].

The facts in this case bear a striking resemblance to those in *Williams*. Here, juror Jones was able to remember that her husband had a nephew and niece who each had an arm deformity from birth when the jury deliberated, but said she did not remember this fact during the voir dire. The panel was given information that the injury on trial concerned an arm of a child which was permanently damaged at birth. Counsel defined the term "immediate family" to include not only relatives but even close friends. Numerous panel members responded to questions concerning their in-laws, friends, and one panel member went so far as to include the sister of her brother-in-law in her answer. Juror Jones had been in the same family with the nephew and niece for 49 years and from the ages she gave of them they both had been born prior to her marriage into the family. Thus, Juror Jones had known both of them at least for the 49 years of her marriage.

Jones stated that she had seen the nephew and niece "a lot of times" and knew the name of the nephew and the town where he lives and his occupation. She knew the first name of the niece and that she lived in Tennessee. Jones stated that both the nephew and niece carried their arms at their side. This would be rather an unusual appearance and such a condition would normally make a lasting impression upon relatives.

When specific questions were put to the panel concerning any member of their immediate family having limitation of motion of their arm or any extremities, this called for a response from juror Jones. In the words of *Williams*, that Jones did not remember the nephew and niece at the time of the questions during voir dire "unduly taxes our credulity."

Counsel for the physician seeks to excuse Jones failure to answer by stating the term "immediate family" as explained by Carpenter's counsel was confusing. It is significant juror Jones did not state that the term was confusing and that she failed to answer for that reason. In fact, Jones said she was not hard of hearing and was listening very carefully and trying to absorb

everything, but did not remember the question about any members of her immediate family who had limitation of motion of their arm. Counsel further suggests that the nephew and niece were not actually members of her immediate family, even though counsel concedes that the definition given by Carpenter's counsel included even close friends. Counsel now, however, seeks to argue that the two people in question were not members of Jones immediate family. In view of the numerous answers given by other panel members which included all degrees of relationships in addition to friends, it cannot be said that her failure to answer was the fact that the two persons are not members of her immediate family.

Finally counsel urges that because Jones said she did not remember these two individuals during voir dire it cannot be established that Jones actually remembered them. Obviously, to sustain this argument would be to hold that a juror could never be found to have intentionally concealed a fact if the juror followed with the simple expedient that certain facts were not remembered at the time a question was asked. Such is not the law.

The court in *Williams* quoted from *Anderson v. Burlington Northern Railroad Co.*, 651 S.W.2d 176, 178 (Mo.App. 1983), as follows:

> Where there exists no reasonable inability to comprehend the information solicited by the question asked of a prospective juror, and where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable, failure to disclose is held intentional. *Id.* at 38.

In this case that test is fully met. There was no reasonable inability on the part of Jones to comprehend the information solicited. Jones actually remembered the existence of the nephew and niece during the jury deliberations. In view of the arm deformity from birth on the part of the nephew and niece which caused them to carry one arm at their side, and in light of the fact that Jones had known the nephew

and niece for almost 50 years and had seen them "a lot of times," her purported forgetfulness is unreasonable. It follows from this conclusion that her failure to disclose the arm deformity of the nephew and niece was intentional. *Williams* held that "... a finding of intentional concealment has 'become tantamount to a per se rule mandating a new trial.'" *Id.* at 37[5].

On finding that the concealment was intentional, it follows that bias and prejudice must be presumed to have influenced the verdict. *Id.* A review of the record convinces this court that the trial court abused its discretion when it failed to grant a new trial for the concealment on the part of juror Jones.

The judgment is reversed and this cause is remanded for a new trial.

SHANGLER, J., concurs.

MANFORD, J., dissents in separate opinion.

MANFORD, Judge, dissenting.

I must respectfully dissent.

The determination by the majority opinion is premised upon the abuse of discretion by the trial court. I cannot agree.

For the most part, the factual account set forth in the majority opinion is accurate, but it is not complete.

Attention must focus upon the inquiry of counsel directed to the particular juror. The pertinent and decisive inquiry is set forth as follows:

(Inquiry of juror Helen Jones)

Q. Okay, and do I understand correctly that you do have some relatives that have palsy type injuries?

A. No....

Q. Okay, and subject to the same objection, do you have relatives that have palsy type injuries?

A. I don't know if it's palsy injury....

Q. Were these relatives close enough to you that you were able to remember them during the jury's deliberations?

A. Not at first ...

Q. The question is were you able to remember during the jury's deliberations these relatives of your husband?

A. After discussion, yes, that came to me, but not in the beginning of the trial, you know, the deliberations, but I just remembered about them. But they never—that was never—as long as I've been in the family, I've never heard any discussion about that because it never did bother them as they were growing up. I guess that's why it never crossed my mind....

Q. Okay, one other question. What was your reason for bringing up these injuries to the rest of the jury during deliberations?

MR. OSBURN: Objection, Your Honor, irrelevant.

THE COURT: Overruled. The objection about the impeaching of the verdict will be taken with this one. As to its relevancy, that will be overruled.

A. Well, probably the reason, other people was bringing up, you know—we were all discussing different things. Other people was saying about, you know, things that they had seen through their life, and then I just remembered that. I never even remembered it at the beginning of it.

Q. Was part of the reason why you were mentioning this was to show that people can—

A. Yes.

Q. —lead normal lives?

A. Right.

Q. With limitations?

A. That's the only reason I brought it up.

Q. And that they can—

A. I surely wasn't trying to change anybody's opinion.

The record of the motion for new trial reveals that this juror discussed the matter of relatives of her husband at the time of the jury deliberation.

From the foregoing, appellant alleges that this juror intentionally concealed the matter of distant relatives having birth deformities. These family members lived in Tennessee and this juror did not even know the address.

As a further note, it is interesting that during voir dire, counsel for appellant declared the following:

Q. Now throughout this procedure you'll hear me say things like is there anybody on this panel, or with members in your immediate family. What I mean by members in your immediate family is not just relatives. I want to include in that term any close relatives, stepbrothers, adopted relatives, close friends, so you'll know that when I ask that question I'm trying to include that.

There is nothing in the record herein which establishes appellant has shown "an immediacy" as referenced in counsel's question. Of all the disclosure upon the record, the following excerpt establishes quite clearly that the trial court did not abuse its discretion:

Q. The question is were you able to remember during the jury's deliberations these relatives of your husband?

A. After discussion, yes, that came to me, but not in the beginning of the trial, you know, the deliberations, but I just remembered about them. But they never—that was never—as long as I've been in the family, I've never heard any discussion about that because it never did bother them as they were growing up. I guess that's why it never crossed my mind....

Appellant has failed to carry the requisite burden of proof as prescribed by *Williams by Wilford v. Barnes Hospital*, 736 S.W.2d 33, 36 (Mo. banc 1987). The result reached by the majority opinion is the substitution of this court's judgment for that of the trial court, which is prohibited.