**Allene R. ALEXANDER,
Plaintiff–Appellant,**

v.

**F.W. WOOLWORTH CO. & Herbert Ivy, Deceased by Shirley Scott, Defendant Ad Litem, Defendants–Respondents.**

**No. 56643.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 1, 1990.

James S. Collins, II, St. Louis, for plaintiff-appellant.

Eugene K. Buckley, John S. McCollough, St. Louis, for defendants-respondents.

CARL R. GAERTNER, Judge.

Plaintiff-appellant, Alexander, appeals from the judgment entered on a jury verdict for the defendants, alleging an abuse of the trial court's discretion in denying her motion for new trial because a member of her jury concealed involvement in prior litigation. We affirm.

This appeal arises out of plaintiff's suit against F.W. Woolworth Company and Herbert Ivy for false imprisonment and malicious prosecution. On September 28, 1985, plaintiff entered defendants' store. There, Ivy, a security guard for Woolworth's, detained plaintiff for allegedly switching price tags on merchandise in the store. Defendants had plaintiff arrested and prosecuted for stealing goods valued under $150. On November 19, 1985, plaintiff was tried, but acquitted, on that charge.

Plaintiff filed a civil suit against defendants alleging that defendants intentionally restrained her against her will and maliciously prosecuted her for stealing. Defendants denied plaintiff's charges, maintaining that any actions taken were performed in a reasonable manner, for reasonable time, and upon reasonable cause for the purpose of investigating and pursuing an alleged crime. Plaintiff's case was tried in the Circuit Court of the City of St. Louis where a jury returned a unanimous verdict in favor of defendants on both the false imprisonment and malicious prosecution claims.

Plaintiff's sole point on appeal concerns the trial court's denial of her motion for a new trial. Plaintiff claims that the trial court abused its discretion in denying her motion because a juror withheld information regarding the juror's involvement in prior litigation. During a post-trial hearing on the motion, Juror Wilhite disclosed that she had been sued by Diner's Club in 1982 for the unpaid balance on her credit card, and that she and her husband had been involved as plaintiffs in an automobile collision case sometime in the 1970's. At the conclusion of the hearing, the trial court found that Juror Wilhite made an unintentional error as a result of a misinterpretation of the lawyers' voir dire questions and overruled the motion for a new trial. Plaintiff appeals the denial of the motion, claiming that Juror Wilhite intentionally failed to disclose her involvement in prior litigation. We disagree.

Charges in new trial motions of non-disclosure by jurors in response to voir dire questions are being made with increasing frequency. Although the principles governing appellate review of such contentions have remained constant over the years, disparate application of the these principles has perhaps given substance to the prediction that "this allegation of error will now be found in each and every motion for new trial—leaving it to post-motion investiga-

tion by computers, indexes and personal interviews, to come up with the specificity called for by Rule 78.07." *Williams by Willford v. Barnes Hosp.*, 736 S.W.2d 33, 39 (Mo. banc 1987) (Billings, C.J. dissenting). Because of the proliferation of claims of juror non-disclosure, we deem it appropriate to examine the rationale underlying the rules to be considered by trial and appellate courts confronted with the often vexing problem of determining whether the constitutional right of every litigant to a trial by twelve impartial, qualified jurors has been so impaired by virtue of the nondisclosure that a jury verdict must be set aside, thus squandering the time, effort and expense attendant to a trial.

■ We recognize both intentional and unintentional nondisclosure of information requested of a potential juror on voir dire. *Williams* at 36. Intentional nondisclosure occurs: (1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror; and (2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable. *Id.* Unintentional nondisclosure exists where the experience forgotten was insignificant or remote in the time or where the venireman reasonably misunderstands the question. *Id.* Intentional withholding of material information requested on voir dire creates an inference of bias and prejudice. *Id.* Where nondisclosure is found to be both unintentional and reasonable, the relevant inquiry becomes whether, under the circumstances, the juror's presence on the jury did or may have influenced the verdict so as to prejudice the party seeking a new trial. *Id.* at 37. Further, the determination of whether concealment is intentional or unintentional is left to the sound discretion of the trial court, with its ruling being disturbed on appeal only upon a showing of an abuse of that discretion. *Id.* at 36.

As noted in *Beggs v. Universal C.I.T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965), the primary and overriding consideration is the right to a trial by twelve fair, impartial, and qualified jurors. Therefore, all other considerations must be evaluated in the light of their affect upon this primary and controlling issue. Because it is unlikely that any juror would admit that his or her failure to respond fully and truthfully to voir dire interrogation was motivated by an intent to conceal partiality toward one party or against another, the court must be guided by inferences. Bias and prejudice *may* be inferred from intentional concealment. *Id.* One case has gone so far as to hold "bias and prejudice *must* be presumed to have influenced the verdict" where intentional concealment is found. *Strickland by Carpenter v. Tegeler*, 765 S.W.2d 726, 729 (Mo.App.1989) (emphasis added). We think it important to note that despite the modern trend to treat "presumption" and "inference" as synonymous, these two words have traditionally been distinguished. A presumption is a mandatory deduction which the law requires the fact-finder to make; an inference is a permissible deduction which the fact-finder may or may not make according to his own conclusions. *Schiles v. Schaefer*, 710 S.W.2d 254, 274 n. 5 (Mo.App.1986); *Frye v. St. Joseph Railway Light, Heat & Power Co.*, 231 Mo.App. 407, 99 S.W.2d 540, 548 (1936); *Merkel v. Railway Mail Assoc.*, 205 Mo.App. 484, 226 S.W. 299, 301 (1920).

■ The determination of the fact-finder may be supported by a reasonably drawn inference even though there be evidence to the contrary. *Frye*, 99 S.W.2d at 548. However, generally a presumption of fact takes flight when contrary facts appear, *Id.*, and the existence or nonexistence of the presumed fact must be determined from all the evidence including the facts giving rise to the presumption, as if no presumption had been operative in the case. *Terminal Warehouse of St. Joseph, Inc. v. Reiners*, 371 S.W.2d 311, 316 (Mo. 1963); *Mercantile Bank and Trust Co. v. Vilkins*, 712 S.W.2d 1, 3 (Mo.App.1986). Therefore, to say that a juror's intentional non-disclosure mandates an *inference* of bias and prejudice is an oxymoron; to say that intentional non-disclosure creates a *presumption* of bias and prejudice is to

recognize that the presumption is rebuttable and disappears in the face of evidence accepted and found credible by the factfinder which contradicts the existence of bias and prejudice. Therefore, regardless of the language used, the rule is that the trial court in the first instance, and the appellate court on review for abuse of discretion, must look to the totality of the circumstances in order to determine whether the non-disclosure may have had a prejudicial impact upon a litigants' right to trial by twelve impartial and qualified jurors or upon the verdict.

A number of factors are worthy of consideration in making such a determination. One factor is the materiality and relevance of the undisclosed experience. For example, failure of a juror to admit that he or she was sued on an over-due charge account or for dissolution of marriage in response to the common question regarding involvement in law suits is generally no indication the juror could not or would not sit impartially upon a tort action seeking damages for personal injury. This is true even though the juror later acknowledges that the question brought the experience to mind but, because of his or her conclusion that it had nothing to do with the case at hand, decided no answer was necessary. In such a situation the juror, who was not entitled to determine his or her qualifications, has violated the duty of answering all voir dire questions fully and truthfully, *Williams* at 36; *Beggs* at 503, and is guilty of intentional concealment. That fact alone, however, should not end the inquiry.

A response disclosing prior litigation experience of such a nature is so patently irrelevant that it warrants neither exploration nor consideration in exercising peremptory challenges. Although there has been intentional concealment, any inference of bias and prejudice is slight or non-existent and the ability of counsel to make peremptory challenges knowledgeably and intelligently has not been impaired.

Conversely, the greater the similarity between the undisclosed experience and the case at hand, the stronger becomes the inference of bias and prejudice, the greater becomes the impairment of counsel's ability to make informed peremptory challenges, and the lesser becomes the credibility of the juror's purported forgetfulness.

We need not prolong this opinion by reviewing the many cases in which questions regarding the effect of juror non-disclosure have been addressed in order to demonstrate considerations such as those set forth above have expressly or implicitly formed the basis of the decision. However, because a phrase used in several recent decisions, "intentional concealment has become tantamount to a per se rule mandating a new trial," is being viewed by some as an absolute rule foreclosing any opportunity for the exercise of trial court discretion, we do deem it advisable to address these decisions. Viewing these decisions in their entirety, rather than isolating the phrase out of context, it is apparent that the "per se rule" is applicable only to instances in which the non-disclosure is accompanied by conduct or such an unreasonable explanation as to leave no doubt concerning an improper motive on the part of the offending juror or at least a likelihood that the undisclosed information may have affected the outcome of the trial.

In *Anderson v. Burlington Northern Railroad Co.*, 651 S.W.2d 176, 178 (Mo. App.1983), this court stated "Intentional non-disclosure as determined by these factors, has become tantamount to a per se rule mandating a new trial...." *Anderson* contains an exhaustive review of prior decisions in which the conduct or explanation of a non-disclosing juror was found to require a new trial and of other decisions in which the absence of such conduct or the reasonableness of the explanation warranted no such action. *Anderson* was a suit seeking damages for injuries to the plaintiff's eye. The jury foreman remained mute when the jurors were asked about law suits and claims made by family members. After a verdict for the plaintiff, it was revealed at a hearing on the motion for new trial that the juror's brother had recovered damages for facial injuries after a three-day trial attended by the juror. When contacted by defendant's attorney after trial and questioned about the matter,

the juror refused to talk to him. Rather, he immediately consulted the plaintiff's attorney and, at the hearing, came up with the explanation that, although he remembered his brother's law suit during the voir dire questioning, "because that's the only law suit I remember in our family," he did not respond because after his own marriage "my family is my wife and myself." *Id.* at 178. Noting that this explanation, contradicted by other testimony of the juror, "unduly taxes our credulity" and considering the conduct of the juror in consulting one attorney while refusing to talk to the other, the court concluded that the defendant had been deprived of its constitutionally guaranteed right to a trial by twelve impartial jurors. *Id.* at 180–81.

The "per se rule" phrase next surfaced in *Frenette v. Clarkchester Corp.*, 692 S.W.2d 834 (Mo.App.1985). This again was a suit for damages for personal injuries. Two members of the jury failed to respond to voir dire questions concerning involvement by themselves or their relatives in law suits or claims. One had been sued for default on a lease. He admitted thinking about this claim when questioned but failed to respond because, in his mind, the claim was without merit and was unrelated to injury or damages. *Id.* at 836. The other juror failed to disclose his involvement in a law suit for his minor son resulting in a $50,000 recovery for personal injuries, which sum the juror administered until his son's majority. On appeal this court held the purported forgetfulness of the son's law suit was not worthy of belief. *Id.* at 837. While the intentional concealment by the first juror alone "suggests" the need for a new trial, in combination with the non-disclosure of a law suit comparable to the case at hand and the incredulous claim of forgetfulness, a new trial was required.

*Williams by Willford v. Barnes Hosp.*, 736 S.W.2d 33 (Mo. banc 1987) adopted the "per se rule" language. A personal injury damage suit, Williams considered the effect of non-disclosure by four jurors of prior involvement in claims or law suits. One, concerning failure to disclose a divorce action, was discounted as "deserving no more than footnote treatment". *Id.* at 35–36, n. 3. In two other instances of non-disclosure, one concerning a suit on a contract, the other concerning credit card actions brought against a juror, the non-disclosures were held to be reasonable because, although some of the voir dire questions were broad enough to cover such matters, the majority of the questions "narrowed the focus" to claims and law suits involving personal injury. *Id.* at 37. Moreover, the nature of the undisclosed information "is simply not the sort that would produce bias" against a party to the law suit on trial. *Id.* at 37. A fourth juror failed to disclose a personal injury action which he had filed and settled a few years earlier. Finding his explanation, purported forgetfulness and that his case was settled without trial, to be incredulous, a slim majority held that bias and prejudice must be presumed to have influenced the verdict. *Id.* at 38. Three justices concluded the circumstances did not warrant finding the trial judge's acceptance of the juror's explanation to be an abuse of discretion.

Finally, in *Strickland by Carpenter v. Tegeler*, 765 S.W.2d 726 (Mo.App.1989), the court applied the "per se rule" to non-disclosure by a juror of relatives suffering from a physical impairment similar to that of the plaintiff. The plaintiff in *Strickland* sought damages for an injury sustained at birth which resulted in a permanent loss of motion in her arm. Jurors were questioned on voir dire about any relatives or close friends who suffered from any limitation of motion of an arm or other extremity. Juror Jones did not respond but discussed during the jury deliberations a niece and nephew of her husband who had suffered from arm deformity and limitation of motion from birth.[1] The

---

1. No mention is made in *Strickland* of the rule prohibiting disclosure of jury deliberations. It is interesting to note, however, that the historic rule which bars the impeachment of a verdict by reason of misconduct of jurors during deliberations is predicated upon the underlying premise that "an inquiry [into what transpired in the jury room] would not only delay but would, in many cases, defeat justice and would bring reproach upon the administration of the

court concluded the juror's purported forgetfulness until during jury deliberations of relatives with noticeable deformities whom she had known for at least 49 years and seen "a lot of times," "unduly taxes our credulity." *Id.* at 728. Under the circumstances such intentional concealment has "become tantamount to a per se rule mandating a new trial." *Id.* at 729.

Thus it is evident that the so called "per se rule" has not been applied except in instances where the non-disclosure, although found to be at least constructively intentional, was coupled with other factors. In each of the cases, the juror's subsequent explanation for not responding was found to be so lacking in credibility that the inference of bias and prejudice was enhanced. All of them focus upon non-disclosure of experiences in similar types of litigation or comparable physical injuries. In *Anderson,* the juror's post-trial conduct, refusing to talk to one lawyer and immediately initiating discussions with the other, rather conclusively demonstrated a lack of impartiality. In *Frenette,* the juror's testimony at the motion hearing revealed an attitude toward litigation which would have been exposed had he mentioned his prior experience during voir dire examination. In *Strickland,* discussion during jury deliberations of the juror's relatives with physical impairment similar to that of the plaintiff casts in doubt that the verdict of the jury was based upon evidence adduced at trial. In one fashion or another, the non-disclosure in each of these cases was viewed as having a likely impact upon the constitutional guarantee of a fair trial before impartial jurors or upon the verdict.

Not only for reasons of judicial economy, but, more importantly, because of the societal need to see the expeditious attainment of finality in judicial proceedings, it is a salutary principle that jury verdicts not be set aside because of juror non-disclosure in the absence of some realistic indication

that the process or the outcome was flawed by reason thereof.

Because of this need to look beyond the simple question of intentional or unintentional concealment to other factors which bear upon the fairness of the trial and the integrity of the verdict, the assessment of the effect of non-disclosure is uniquely appropriate for the exercise of trial court discretion. The trial judge is best able to observe the manner of the prospective juror as he or she reacts to the oft-times stressful ordeal of voir dire examination as well as the demeanor of the juror of explaining any non-disclosure in post-trial testimony. Therefore, the trial court's acceptance or rejection of the juror's explanation should not lightly be overturned on appeal. Only when an appellate court is convinced from a totality of the circumstances that the right to a fair trial and the integrity of the jury process has been impaired should the trial court be found to have abused its discretion. *Williams* at 38; *Beggs* at 503.

We find no abuse of discretion in the denial by the trial court of plaintiff's motion alleging non-disclosure by juror Wilhite. As in *Williams,* it is reasonable and understandable that she would not recall the credit card action against her when questioned about her involvement in law suits. She merely called the credit company's attorney, arranged by phone for installment payments and paid her debt over a period of time. She testified "I didn't even think about it because when he was saying 'suit', what I had in mind was being brought into court with a judge, the whole thing, I didn't think of that as being a suit because I never had been in court."

Equally reasonable is her explanation for failure to mention that more than fifteen years before she and her husband had been injured in an automobile collision.[2] We have not been supplied with any details of this incident. The record merely reflects

---

law and subject the jury system to the contempt of all men." *Leahy v. Tesson,* 108 Mo.App. 372, 374, 83 S.W. 781 (1904). Similar concerns indicate a need to approach the effect of juror non-disclosure with caution.

2. The failure of juror Wilhite to disclose the claim arising from the automobile accident is not mentioned in plaintiff's motion for new trial. Accordingly, the point has not been preserved for appellate review. *Lohsandt v. Burke,* 772 S.W.2d 759, 560 (Mo.App.1989).

that when plaintiff's attorney questioned her after the trial about the credit card action in which she had not gone to court, she volunteered that she and her husband had been injured in an automobile accident more than fifteen years earlier. Her only involvement was to sign papers her husband brought to her. The trial court's finding that her failure to disclose this incident was reasonable and unintentional is amply supported. Moreover, neither of juror Wilhite's prior experiences have any similarity to the case upon which she served as a juror. Her experiences are "simply not of the sort that would produce bias against" a plaintiff seeking damages for false imprisonment and malicious prosecution. *Williams* at 37.

Judgment affirmed.

HAMILTON, P.J., and STEPHAN, J., concur.