Sandra J. WASHBURN, and David M. Washburn, Plaintiffs–Respondents,

v.

MEDICAL CARE GROUP and John Rice, M.D., Defendants–Appellants.

No. 56898.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 18, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied
March 5, 1991.

Philip Louis Willman, Robyn Susan Fox, St. Louis, for defendants-appellants.

Jerome Wallach, St. Louis, for plaintiffs-respondents.

GARY M. GAERTNER, Presiding Judge.

Appellants, Medical Care Group and Dr. John Rice, M.D., appeal from a jury verdict in favor of respondents, Sandra J. and David M. Washburn. Respondents sought compensation for injuries Sandra Washburn claimed she sustained as a result of her appendectomy.

During the evening of March 17, 1984, Sandra experienced pain in her abdomen which continued throughout the day of March 18. On March 19, at 7:30 a.m., David, her husband, called appellant, Medical Care Group, the couple's HMO medical provider, and tried to set up an appointment for Sandra to see a doctor. David was instructed by the answering service to call back at 8:30 a.m., when the office opened. When David called back at 8:30 a.m., he was told that the earliest Sandra could see a physician would be 10:45 a.m. David then informed Medical Care Group that he intended on taking Sandra to an emergency room rather than wait. David was then told that Medical Care Group would not authorize payment for the emergency room visit. David took Sandra to Christian Hospital Northwest's emergency room shortly thereafter. Between 9:15 a.m. and 11:00 a.m., Sandra was given a battery of tests including a blood test, which occurred shortly after 9:15 a.m., a pelvic examination, urinalysis, pregnancy test, abdominal X-ray and a physical examination. A white blood cell count was taken at approximately 10:20 a.m. indicating that Sandra possessed a white blood cell count of 11,000. A Doctor Patel saw Sandra at approximately 11:00 a.m. Sandra was given Tylenol 3, a pain reliever containing codeine, and went to see Dr. Rice, a physician with Medical Care Group.

Dr. Rice did not repeat any of the above tests except a physical examination of Sandra in his office. Dr. Rice called Dr. Patel, who related the results of his examination and tests to Dr. Rice. Apparently, Sandra's pain had subsided by the time she reached Dr. Rice's office. Based on his and Dr. Patel's examinations of Sandra, Dr. Rice was not certain of the source of Sandra's pain and opined that it could be stomach flu, an ulcer, a spastic colon, infectious colitis or early appendicitis. Dr. Rice instructed Sandra to call him if the pain got

worse and gave Sandra some Tylenol 3 to relieve the pain.

Around 10:30 p.m. that evening, David called Medical Care Group because Sandra's pain had increased and her temperature had reached 100 degrees. Dr. Trotter, the on-duty physician, advised the Washburns to either go to the emergency room or to continue to monitor Sandra's temperature for an hour and call him back. Sandra's condition improved, however, and when she again talked to Dr. Rice at 9:00 a.m. on March 20, she advised him that she was feeling better. Dr. Rice told her to call back if the condition changed. At 11:00 a.m., Sandra experienced a surge of pain in her right abdomen and scheduled an appointment with Dr. Rice for 1:00 p.m. Dr. Rice ran a white blood cell count which was abnormally high and he referred Sandra to Dr. Halverson, a surgeon. Sandra's appendix had perforated (burst) and an appendectomy was performed later that afternoon.

Sandra underwent two subsequent surgeries allegedly caused by Dr. Rice's failure to diagnose appendicitis on March 19, during her initial visit. On January 28, 1986, Sandra had a laparotomy which showed several adhesions around her Fallopian tubes and scar tissue which were surgically removed. On February 7, 1986, Sandra was operated on for an obstructed small intestine.

Although both parties introduced expert medical testimony regarding the causes of those problems leading to the subsequent surgeries, it's apparent that the jury believed respondents' evidence. This evidence showed that Dr. Rice fell below the standard of care in treating Sandra because he failed to repeat a pelvic examination, a white blood cell count, failed to conduct two other tests which could have unmasked Sandra's early appendicitis and failed to refer Sandra to a surgeon on March 19. Further, respondents assailed Dr. Rice's prescribing Tylenol 3 since it can mask the symptoms of appendicitis.

As a result of Dr. Rice's failure to properly diagnose Sandra's appendicitis before it had perforated, Dr. Halverson needed to make a larger incision in order to perform the appendectomy. The larger incision and the more complex operation, which were due to the fact that the appendix had perforated, caused Sandra's internal injuries requiring two subsequent surgeries.

The trial of the matter commenced on February 27, 1989, with voir dire examination. Both parties presented evidence to the jury on February 28 and March 1, of 1989. The jury found in favor of the respondents and unanimously awarded Sandra Washburn $95,000.00 in damages. By a verdict of 11 to 1, David Washburn was awarded $1,000.00 in damages for his loss of consortium.

Some time after the jury was discharged, appellants discovered that three of the members of the jury had failed to disclose lawsuits that they either had initiated or in which they had been named as defendants. Appellants specifically noted each such incident in their motion for new trial and the circuit court held a hearing on this issue on May 25, 1989. After hearing the testimony of all three jurors, the court denied the motion for new trial without issuing a memorandum of law. Appellants appeal this decision and also bring to our court two allegations of trial error. We will briefly recite the facts pertinent to the juror nondisclosure issues.

During the voir dire examination, counsel for respondents asked the panel how many of them had been "sued by someone in a court of law." In response, one juror volunteered that he had been sued but that the plaintiff in the case had later defaulted. Venireman Miner then responded that he had been sued about six years earlier.[1] Counsel got no response to his inquiry as to whether any of the panel's immediate family had been sued by someone.

Respondents' counsel next asked whether anyone had ever "brought a lawsuit against someone else." Venireman Gorcy responded that he had sued American Air-

---

1. It was later learned during the hearing on the motion for a new trial that the lawsuit to which he was referring arose out of an automobile accident.

lines for personal injuries he received in an airplane accident in West Germany. His suit was still pending. Another venireman responded that he had a pending lawsuit in small claims court in which he was a plaintiff. During appellants' voir dire, this same juror acknowledged that in that lawsuit he was the plaintiff seeking the unpaid rent of a person who withheld rent from him. Respondents' counsel also stated, in response to a panel member's inquiry, that the panel should not consider "divorce a claim." He went on to point out that he sought disclosure of claims "predominantly for medical injury where either a claim was brought against them or they are involved in a claim."

Appellants' attorney, during his questioning of the panel, then asked whether anyone had ever filed a worker's compensation claim. One venireperson responded that he had filed two such claims. Appellants' attorney then informed this venireman, Mr. Douglas, and the panel that, unlike a worker's compensation case, they, as a jury, must find negligence or fault on the part of the defendants in order to render a verdict against them. Mr. Douglas proceeded to state that he was not satisfied with the way one of his injuries had been treated by his medical provider. Mr. Douglas was not selected as a member of the jury.

Venireman Helms also responded that he had filed a worker's compensation claim. After explaining that he was dissatisfied with the outcome of his claim for lost wages, he assured counsel that his experience would not bias his consideration of the present case. Appellants' attorney then asked if any of the venire "ever had a claim that has not gone to a lawsuit, but where you have received money damages for personal injury." Appellants reiterated the question by asking whether anyone had brought "claims that have not gone to a lawsuit." No one responded to these questions.

■ Appellants' first claim of error relates to the voir dire proceedings and subsequent selection of a jury. Three veniremen, all of whom were selected as jurors, failed to disclose their involvement in prior

lawsuits. This occurrence is not unusual; many such cases reach our appellate dockets. Missouri recognizes both intentional and unintentional nondisclosure of information requested of potential jurors. *Alexander v. F.W. Woolworth Co., et al.,* 788 S.W.2d 763, 764 (Mo.App., E.D.1990). Intentional nondisclosure occurs where there is (1) no reasonable inability of the juror to comprehend the information sought by the attorneys' questions and (2) where it is shown that the juror actually remembers the experience or his forgetfulness is unreasonable. *Id.* Unintentional nondisclosure, on the other hand, exists where the undisclosed matter was insignificant or remote in time or where the venireman reasonably misunderstands the question. *Id.* 788 S.W.2d at 765. The determination of whether such nondisclosure is intentional or unintentional is left to the sound discretion of the trial court which will only be disturbed on appeal upon a showing of an abuse of this discretion. *Id.*

We also are inclined to point out that numerous cases have suggested that intentional nondisclosure by a jury is "tantamount to a per se rule mandating a new trial." *See Strickland by Carpenter v. Tegeler,* 765 S.W.2d 726, 729 (Mo.App., W.D.1989); *Williams by Wilford v. Barnes Hospital,* 736 S.W.2d 33 (Mo. banc 1987); *Frenette v. Clarkchester, Corp.,* 692 S.W.2d 834 (Mo.App., E.D.1985); and *Anderson v. Burlington Northern Railroad Co.,* 651 S.W.2d 176 (Mo.App., E.D. 1983). While it is indeed difficult to find any cases which find an intentional nondisclosure without also requiring a new trial, this court's well reasoned *Alexander* opinion distinguished the per se cases as being those cases where the nondisclosure was coupled with other factors bolstering the inference of bias. *Alexander,* 788 S.W.2d at 768. *Alexander* pointed out that in the per se cases, the courts were faced with conduct or an explanation which was so unreasonable that there was a greatly enhanced probability that the juror possessed an improper motive and that the nondisclosure of the information had a "likely impact upon the constitutional guarrantee of a fair trial before impartial jurors or upon

the verdict." *Id.* at 768. Therefore, we reaffirmed that the trial court is granted discretion in determining whether the particular nondisclosure was intentional in such a manner that bias and prejudice *may* be inferred. *Id.* at 765. However, we point out, that this simply means that the fact finder may draw an inference of bias and prejudice from an intentional nondisclosure according to his own conclusions. *Id.* at 765. The fact finder is not required to make this inference.

In evaluating whether the nondisclosure may have had a prejudicial impact upon the right to a trial by twelve qualified jurors, the trial court must look at the totality of the circumstances. *Alexander,* 788 S.W.2d at 766. The most significant of the circumstances appears to be whether the undisclosed experience is similar or relevant to the case being considered. The greater the similarity between the undisclosed experience and the case being considered, the stronger the inference of bias and prejudice. *Id.* at 766. Indeed a great similarity between the experiences decreases the ability of counsel to make informed peremptory challenges and lessens the credibility of the jurors' forgetfulness. *Id.* With these general precepts in mind, we will address each of the three jurors in the present case.

Juror Miner failed to disclose that in 1980 his wife had filed a petition against him apparently under Missouri's Adult Abuse Act. At the hearing on appellant's motion for new trial, Mr. Miner stated that his wife had successfully obtained an order of protection against him. He also stated that he and his wife had worked out their differences and were still together.

Mr. Miner claimed that he did not remember this particular incident during voir dire and that he was under the impression that the attorneys were seeking prior lawsuits involving claims for personal injury. While Mr. Miner's loss of memory regarding an incident which was probably emotional and which involved a hearing at which he was present, is not entirely credible, the incident which he did not disclose was not related to the negligence claim in the present case.

Respondents' counsel clearly stated during voir dire that he was only interested in claims for personal injury and not divorce claims. While Mr. Miner's claim was not a divorce action, it was certainly a domestic dispute not involving personal injury. It simply was not the type of claim counsel was seeking to discover.

In *Williams by Wilford v. Barnes Hosp.,* 736 S.W.2d 33 (Mo. banc 1987), the Supreme Court stated that a juror's nondisclosure of a divorce proceeding could not be considered intentional since counsel had excluded such claims from his inquiry. *Id.* at 35 n. 3. In the present case, we find that juror Miner's nondisclosure was likewise unintentional and not prejudicial since counsel was not seeking to discover such a claim.

Juror Nekula, who was the jury foreman, failed to disclose that he had been sued as a result of an automobile accident in 1984. During the new trial hearing, Mr. Nekula remembered the details of the accident and remembered that it had been settled one day before trial. He also remembered that he was thinking of filing a counter-claim for $2,500.00, representing the damage to his car, but he did not remember whether a counter-claim was ever filed.

Mr. Nekula's explanation for not disclosing this incident during voir dire was that he did not think of himself as being sued since his claim and lawsuit were handled by his insurance company. He also stated that he forgot about the case during voir dire.

We agree with appellants' assertion that Mr. Nekula's forgetfulness was unreasonable or unlikely. Mr. Nekula was twenty-four years old during the voir dire proceedings. His accident occurred merely five years earlier, when he would have been a nineteen year old driver. In addition, Mr. Nekula was able to remember the details of the incident during the new trial hearing, stated that he had been in contact with the attorney who was provided by his insurance carrier and was served with the petition. He further acknowledged that he

answered interrogatories and discussed filing a counter-claim with his attorney or insurance representative. Mr. Nekula's having forgotten this incident is not a reasonable explanation for his failure to disclose. However, this fact does not end our inquiry.

As was the case with Mr. Miner, the questions propounded did not require disclosure of the particular incident involving Mr. Nekula. Counsel specifically and numerously queried the venire regarding claims for "medical injuries" or "personal injury." While Mr. Nekula certainly suffered damage to his car, there was never any suggestion that he was physically injured in the accident. In fact, there's no indication that the other party to his accident was physically injured either. The record is simply devoid of a showing that Juror Nekula failed to disclose a claim for medical or personal injury. Since Mr. Nekula had no duty to answer a question that was not asked, there can be no nondisclosure, intentional or unintentional. *Stallings v. Washington University*, 794 S.W.2d 264, 268 (Mo.App., E.D.1990).

■ If we were, for the sake of argument, to assume that the question asked did create a duty upon Mr. Nekula to respond, we are obliged to point out that appellant did not adequately show how this nondisclosure could have prejudiced the jury. The fact that Mr. Nekula's claim did not involve personal injury decreases any similarity between his claim and the present action. In addition, we logically discern that any subjective bias he may have harbored would likely be sympathetic to the cause of a defendant, since Mr. Nekula was, five years prior, the defendant in a lawsuit. If this is so, the present verdict in favor of the respondent/plaintiff disproves the effect of any subjective bias.

■ Juror Helms' nondisclosure is much more significant. During the new trial hearing, Mr. Helms stated that he had filed a lawsuit in 1971 for personal injuries he received when in an automobile accident. Mr. Helms sought twenty-five thousand dollars ($25,000.00) for injuries to his ribs, nose, back and for facial bruises. He also stated that he was unable to work for one month and spent seventeen days in the hospital recuperating from his injuries. The case was settled without a trial. Mr. Helms did not remember the amount of his settlement, but remembered that it "was not enough." Mr. Helms claimed that he did not recall this incident when questioned during voir dire.

There is no bright line rule as to how remote in time a claim must be for forgetfulness to be accepted as reasonable. In *O'Brien v. Vandalia Bus Lines*, 351 Mo. 500, 173 S.W.2d 76 (1943), a new trial in an automobile case was not ordered where a juror failed to disclose that he filed a personal injury suit in regards to an automobile collision ten years earlier. *Id.* 173 S.W.2d at 77. However, in *Frenette*, a personal injury case, one juror had forgotten about a lawsuit which he brought on behalf of his son for fifty thousand dollars ($50,000.00) approximately twelve years prior to the voir dire examination. This court ordered that a new trial be conducted. *Frenette*, 692 S.W.2d at 837.

■ Fifteen years is a significant lapse of time, however, a physical injury which causes one to spend 17 days in the hospital and miss one month of work is an experience not likely to leave one's memory for quite some time. Therefore, the reasonableness or veracity of Mr. Helms' claim that he forgot about his prior lawsuit was really a question of his credibility. In reviewing the trial court's obvious determination that Mr. Helms truly had forgotten this incident, we note that the fact that he subsequently remembered the incident during the new trial hearing is only relevant to whether his claimed forgetfulness during voir dire was reasonable. The vital question is whether the juror had a "then present awareness of the prior experience." *Anderson*, 651 S.W.2d at 178.

In the present case, Mr. Helms unequivocally stated that his memory of the incident became clear only after investigators for both parties showed him documents from his case. In *Hornberger v. St. Louis Public Service Co.*, 353 S.W.2d 635 (Mo.1962), a juror who claimed to have forgotten about

a personal injury claim approximately 12 years prior, stated that he had remembered the claim only when probed by defendant's attorney one day before the new trial hearing and after later being shown letters regarding a claim. *Hornberger,* 353 S.W.2d at 641–42. The juror went on to testify that he did not remember the incident *during voir dire. Id.* The Missouri Supreme Court did not find that the trial court's denial of a new trial was an abuse of discretion. *Id.* See also *Goodman v. Firmin Desloge Hosp.,* 540 S.W.2d 907, 911 (Mo.App., St.L.Dist.1976). The fact that Mr. Helms recalled the details of his accident only after having his memory jogged by the investigators and attorneys bolsters his claim of forgetfulness during voir dire.

Most importantly, we should never lightly regard the ability of the trial court to gauge the demeanor and credibility of witnesses. As we stated in *Schiles v. Schaefer,* 710 S.W.2d 254 (Mo.App., E.D.1986) "the experienced trial judge here was in an excellent position to observe the veniremen-juror's attitude and demeanor and to determine whether [he] had intentionally concealed the facts ..." *Schiles,* 710 S.W.2d at 273 (quoting *Goodman,* 540 S.W.2d at 911).

In the present case, the trial court had the opportunity to view the entire voir dire examination, the entire trial and conducted a hearing on appellants' motion for a new trial. In addition, the trial judge himself questioned Mr. Helms at the new trial hearing regarding his ability to remember the incident during voir dire.

A review of the multitude of nondisclosure cases clearly reveals that each case must be evaluated on its own facts. Given the nature of the facts, the undisclosed lawsuits in the present case and the deference due a trial court's determination of credibility, we do not find that the court abused its discretion in denying appellants' motion for new trial.

■ Appellant also seeks review of two instances of alleged trial court error. Appellant first alleges that the court erred in allowing into evidence the following telephone conversation which David allegedly had with a Medical Care Group receptionist at 8:30 a.m. on March 19, 1984:

Q Did you ask if you could take your wife to the emergency room?

A I told her that if 10:45 was the earliest she could be seen I was going to take her to the emergency room.

Q And after that conversation did you have any further—was there anything else said in that conversation that we left out?

A They said that they weren't going to authorize payment for the expenditures for the emergency room.

Appellant argues that this hearsay was inadmissible as an admission against interest since respondent did not lay a proper foundation to establish that the defendant was acting within his or her scope of employment. Respondents argue that sufficient evidence existed to fit the testimony within the admission against interest exception to hearsay.

Respondents apparently argue that, since Medical Care Group provided the Washburns with a telephone number to call for medical care, and, since they called and spoke with someone who apparently worked as a receptionist, any statement made by that receptionist regarding medical care would constitute an admission against Medical Care Group.

■ Certainly statements by employees may constitute admissions of the employer if the employee is acting within the scope of his authority in making the statements. *Gary Surdyke Yamaha, Inc. v. Donelson,* 743 S.W.2d 522, 524 (Mo.App., E.D.1987). The party seeking to admit such a statement, in this case the respondent, must prove the fact and scope of the agency. *State ex rel. State Hwy. Comm. v. Baker,* 505 S.W.2d 433, 436 (Mo.App., Spfd.D. 1974). The scope is established by the employer creating an appearance of power which leaves third parties to believe that the employee would speak on behalf of the employer. *Donelson,* 743 S.W.2d at 524.

In the present case, it can be said that appellants could rely on a receptionist's instructions regarding the availability of a

particular doctor by virtue of respondents furnishing appellants with access to this particular telephone line. We cannot, however, leap to respondents' conclusion that this same access inferred that the receptionist had authority to definitively state whether a particular medical treatment would be covered under respondents' HMO coverage. Respondents did not show that the declarant took any part in decisions relating to covered medical treatments nor any evidence establishing that the declarant acted within any executive capacity. See *Donelson*, 743 S.W.2d at 524. Both the identity and responsibility of the declarant remained a complete mystery.

■ Having determined that a proper foundation for the statement was not made, we, nonetheless, fail to determine that appellants were prejudiced by its admission into evidence. Appellants argue that the statement led the jury to believe that the tests which Dr. Rice failed to perform, as alleged, were not performed because they would not have been covered by respondents' HMO insurance plan. We cannot agree.

The statement itself was made only in regard to the *emergency room visit*, not Dr. Rice's examination nor any subsequent treatments performed by Medical Care Group. There was no testimony that the tests which were run at Christian Northwest were incomplete for any reason. The allegation of respondents' concerned Dr. Rice's lack of proper testing and diagnosis.

Furthermore, Dr. Rice's explanation for not conducting the tests was that they had already been performed by Christian Northwest. There was no allegation at trial that the tests were not performed because a receptionist (or anyone else) had indicated that they would not be paid for by the HMO coverage. We cannot find the admission to have prejudiced appellants.

■ Lastly, appellants argue that the court improperly allowed respondents' expert to base an opinion on a hypothetical which contained facts not in evidence. Specifically, in respondents' hypothetical, respondents asked Dr. Richard Bassin to assume that Medical Care Group had advised David that Sandra's symptoms "did not warrant an emergency." This clearly was not exactly what was said to David by the receptionist.

However, appellants' counsel objected to the hypothetical without indicating which portion(s) of the hypothetical he believed was erroneous. A specific objection to any error in a hypothetical must be raised to preserve it on appeal. *Skelton v. General Candy Co.*, 539 S.W.2d 605, 614 (Mo.App., St.L.Dist.1976). The reason for the rule is to allow the trial court an opportunity to correct the error. That purpose is abundant in the case at bar where the hypothetical is very long and involved numerous matters of evidence which could have been the basis for the objection. The appellants had specifically objected to an earlier hypothetical posited by respondents' counsel and the court sustained his objection. Therefore, we can see no reason to review appellants' subsequent, nonspecific objection to the revised hypothetical. Point denied.

The verdict of the jury is affirmed.

CRIST and PUDLOWSKI, JJ., concur