Winston ROGERS, Plaintiff/Appellant,

v.

Leslie F. BOND, M.D., and Metropolitan Medical & Health Services, Inc., Defendants/Respondents.

No. 64677.

Missouri Court of Appeals, Eastern District, Division Two.

July 19, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 23, 1994.

Elbert A. Walton, Jr., Elbert A. Walton, Jr., P.C., Montgomery, AL, for appellant.

Robert A. Wulff, Amelung, Wulff & Willenbrock, P.C., St. Louis, for respondents.

CRANE, Presiding Judge.

In this medical malpractice action, plaintiff Winston Rogers appeals the trial court's entry of judgment notwithstanding the verdict in favor of defendants. We find the trial court erred in concluding that plaintiff's claim for injuries was collaterally estopped by defendants' verdict in plaintiff's wife's separate action for loss of consortium. We also find the trial court did not abuse its discretion in denying defendants' motion for new trial on the grounds of juror nondisclosure during voir dire. Accordingly, we reverse the trial court's entry of judgment notwithstanding the verdict, and remand for entry of judgment in accordance with the verdict.

The underlying medical facts of this case have been set out in *Rogers v. Bond,* 839 S.W.2d 292 (Mo. banc 1992) and will not be restated here. In 1983 plaintiff brought an action against defendants Dr. Leslie F. Bond and Metropolitan Medical & Health Services, Inc. for damages for medical malpractice. Plaintiff's wife, Bobbie Rogers, sought damages for loss of consortium in the same action. The jury returned a $300,000.00 verdict for plaintiff and a $7,250.00 verdict for wife. Defendants filed a Motion for JNOV or in the Alternative a Motion for New Trial. The trial court overruled both motions as to plaintiff, but sustained defendants' new trial motion as to wife's consortium claim on grounds unrelated to this appeal.

On retrial of the consortium claim, the jury returned a verdict in favor of defendants. After that judgment was entered, wife appealed the trial court's order granting defendants' motion for new trial which had resulted in the retrial of her consortium claim. Defendants appealed the original judgment in favor of plaintiff.

These appeals were ultimately decided by the supreme court in *Rogers v. Bond,* 839 S.W.2d 292 (Mo. banc 1992). The court dismissed wife's appeal as untimely. It reversed the judgment for plaintiff due to instructional error, and remanded the case to the trial court for a retrial of plaintiff's medical malpractice claim against defendants.

Upon retrial, the jury returned a $425,-000.00 verdict in favor of plaintiff. The trial court overruled defendants' motion for new trial, sustained defendants' motion for judgment notwithstanding the verdict, and entered judgment in favor of defendants. The trial court found that the issue of defendants' liability was determined in the retrial of wife's consortium claim, and the verdict in favor of defendants collaterally estopped plaintiff's recovery in his malpractice action.

Plaintiff now appeals the trial court's entry of judgment notwithstanding the verdict.

Plaintiff asserts that the judgment in wife's loss of consortium claim did not collaterally estop his claim. Collateral estoppel precludes the same parties, or those in privity, from relitigating issues which have been previously litigated. *Missouri Ins. Guar. Ass'n v. Wal–Mart*, 811 S.W.2d 28, 32 (Mo. App.1991). When determining whether to apply collateral estoppel, the court considers four factors: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Id.; Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979) (emphasis in original).

Loss of consortium is a separate and distinct cause of action. *Lear v. Norfolk & Western Ry. Co.*, 815 S.W.2d 12, 14 (Mo.App. 1991). The spouse who seeks damages for loss of consortium must not only show that the injured spouse had a valid claim for personal injuries, but also that he or she suffered damages arising out of the injured spouse's injuries. *Id.* at 14–15.

When wife's consortium claim was submitted to the jury, the jury was instructed that the essential elements were that defendant Bond was negligent, that Bond's negligence caused [plaintiff's] injuries, and that wife thereby sustained damage. The jury found for defendants and made no damage award.

 Although the jury may have found that Bond was not negligent or that Bond's negligence did not cause plaintiff's injuries, the jury could also have found that defendants acted negligently and that plaintiff was injured, but that wife did not thereby sustain damage. Either finding could have supported the jury's verdict in wife's action. Collateral estoppel may be applied only to those issues which were necessarily and unambiguously decided. *King Gen. Contr. v.*

*Reorganized Church*, 821 S.W.2d 495, 501 (Mo. banc 1991). The only issue necessarily decided in wife's case was whether wife sustained damages. This finding did not preclude a finding that plaintiff was injured or that plaintiff sustained damages. Accordingly, the trial court erred in applying collateral estoppel to bar plaintiff's claim.

### MOTION FOR NEW TRIAL

Because we have found that the judgment notwithstanding the verdict was erroneous, we reach defendants' argument that the trial court erred in denying their motion for new trial. Rule 72.01(c). Defendants assert that the trial court erred because one juror intentionally failed to disclose she was previously a defendant in a lawsuit.

Plaintiff's attorney directed the following questions to the venire panel on the issue of prior claims and lawsuits:

"Any persons on the jury who have filed a claim for medical malpractice before?" (One venireperson responded.)

"Anyone ever involved with filing a claim for any personal injuries that you sustained, of any kind, accident or nonmedical malpractice, just any kind?" (Several venirepersons responded about car accidents, and another juror responded about a slip and fall accident.)

"Now, in addition to accidents, sometime [sic] people are injured on their jobs and have worker's comp claims. Anyone had any of those types of claims?" (One venireperson responded.)

"Any persons on the jury have been defendants against any claims, where you had to defend a claim, either personally or by use of a lawyer?" (One venireperson responded about an auto accident.)

"Anyone else that were involved in any cases where you were defendants?" (No one responded.)

On the same topic defense counsel asked the panel: "Previously you were asked whether any of you were ever a defendant in a lawsuit. I would like to ask now ... have any of you, or any of your immediate family ever been a plaintiff in a lawsuit for personal

injuries?" Seven venirepersons responded. Counsel then asked about claims brought for personal injuries which did not result in a lawsuit. Three venirepersons responded. Defense counsel did not ask whether anyone had been a defendant in a case.

One of defendants' grounds for a new trial was that they were denied their right to an impartial panel of twelve jurors because one or more of the jurors failed to truthfully respond to questions asked during voir dire concerning prior claims, litigation and involvement with defendants. At the hearing on the motion, defendants called one witness, juror Shirley Yancy, and questioned her about her failure to disclose the fact that she had once been a defendant in an action. At the hearing she initially testified she did not recall ever being a defendant in a lawsuit. After defense counsel questioned Yancy about a specific case Lindell Hospital brought against her in 1990 for an unpaid bill for $1,130, she recalled she was a defendant in that case. Her testimony was as follows:

Q. That suit concerned a bill for, I believe, one thousand one hundred thirty dollars?

A. Yes, but—I mean they been paid off.

Q. Okay.

A. I didn't have to do anything. I just paid them off.

Q. As a result of that suit, was a judgment entered against you for that amount?

A. Well, yes, I think so. They—I don't know what you call it, but they took my money out of my bank account.

Q. Okay.

A. Nothing else came of it. I mean I paid the bill.

Q. August 27, 1991, an execution was run on your bank account, was it not?

A. Yes.

Q. They took some money out of your bank account?

A. Yes. I never had to go to court or anything.

Q. November 28, 1991, another execution was run at State Hospital on your employment, on your wages?

A. Yeah, they garnished my wages.

Q. On March 25th, 1992, another execution was run, was it not?

A. From Lindell Hospital you mean?

Q. Yes.

A. They—like I said, they garnished my wages, yes.

Q. They ran another one on June 28, 1992, and another one on September 30, 1992, is that correct?

A. I don't remember the dates, but they did take money out of my checking account.

Q. But you are the Shirley Yancy who was the defendant in that lawsuit, were you not?

A. Yes.

Q. And according to the court file, a satisfaction of judgment was filed on November 24, 1992, would that be about the time that it was paid off?

A. I don't recall exactly, but it was paid off.

Q. Okay. That was just a few months prior to the trial of this case, was it not?

A. Yeah.

On cross-examination she testified that she had been having a lot of financial problems and did not remember everyone who had gotten in touch with her about bills. She testified that she did not knowingly attempt to withhold any information from defense counsel during voir dire and that she answered every question as truthfully and as honestly as she could at the time. On redirect she testified that she "wasn't putting lawsuits with garnishments and checks" until defense counsel reminded her of the suit. Although she was aware of the garnishment at the time of voir dire, she did not connect it to a lawsuit.

■ The trial court denied the motion without specific findings. When such a motion is denied, we consider all findings necessary to the result to be implicit in the trial court's action. *Midwest Materials v. Village Development,* 806 S.W.2d 477, 501 (Mo.App. 1991).

■ It is within the trial court's discretion to find nondisclosure to be intentional or unintentional. *Williams by Wilford v.*

*Barnes Hosp.,* 736 S.W.2d 33, 36 (Mo. banc 1987). Intentional nondisclosure occurs 1) where the venireperson has no reasonable inability to comprehend the information sought by the attorneys' questions, and 2) where the venireperson actually remembers the experience or the experience was so significant that forgetfulness is unreasonable. *Id.* Unintentional nondisclosure occurs where, for example, the matter was insignificant or remote in time or where the venireperson has reasonably misunderstood the question. *Id.* We may overturn a determination of whether a nondisclosure is intentional or unintentional only upon a showing of abuse of discretion. *Id.*

Defendants argue that Yancy's nondisclosure was intentional because it was inconceivable that she did not remember a suit filed against her in 1990 when her final payment on the judgment occurred approximately seven and one half months prior to the start of the trial. In light of the totality of circumstances, the trial court reasonably accepted Yancy's explanation of her failure to disclose the lawsuit and concluded that her nondisclosure was unintentional. Yancy did not remember the lawsuit at voir dire or at the hearing until she was specifically reminded of it. She testified that she did not go to court, that the bill was paid by garnishment, and that she did not equate garnishment proceedings with lawsuits.

Further, all of plaintiff's counsel's questions leading up to the questions about being a defendant were limited to claims for medical malpractice, personal injuries, and workers' compensation. When plaintiff's attorney shifted to asking the venirepersons about being defendants against any claim, he did not indicate he was broadening his use of "claim" from the context he had been using it. Plaintiff's attorney did not give examples of other lawsuits which might alert the venirepersons about other types of lawsuits. Nor did counsel attempt to explain or define what was covered in a lawsuit. All the other venirepersons' responses to plaintiff's counsel's questions during voir dire focused on personal injuries. Defense counsel did not follow up on plaintiff's counsel's question about being a defendant and focused only on lawsuits and actions for personal injuries in which a venireperson had been a plaintiff.

The trial court could find Yancy reasonably misunderstood that the question included the action against her for unpaid bills because the questions focused on lawsuits and claims for injuries, none of the questions related to actions for overdue bills, and she did not understand a garnishment proceeding was the same as a lawsuit. *See, e.g., Beeks v. Hierholzer,* 831 S.W.2d 261, 266 (Mo.App. 1992). In *Beeks* the court looked at the totality of circumstances in a wrongful death action and affirmed the trial court's denial of new trial for juror nondisclosure of actions relating to monetary obligations. *Id.* The questions posed during voir dire focused primarily on claims involving personal injury and workers' compensation, and would not necessarily alert a lay person to disclose information concerning his or her financial difficulties. *Id.*

■■■ Where nondisclosure is found to be both unintentional and reasonable, the relevant inquiry becomes whether the juror's presence did or may have influenced the verdict as to prejudice the party seeking a new trial. *Anglim v. Missouri Pacific R. Co.,* 832 S.W.2d 298, 306 (Mo. banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). A trial court's factual determination of lack of prejudice will be disturbed on appeal only for abuse of discretion. *Id.* We find an abuse of discretion only when we are convinced from the totality of the circumstances that the litigant's right to a fair trial and the integrity of the jury process has been impaired. *Id.; Alexander v. F.W. Woolworth Co.,* 788 S.W.2d 763, 768 (Mo.App.1990).

One of the factors for consideration is the materiality and relevance of the undisclosed experience. *Alexander,* 788 S.W.2d at 766.

[T]he greater the similarity between the undisclosed experience and the case at hand, the stronger becomes the inference of bias and prejudice, the greater becomes the impairment of counsel's ability to make informed peremptory challenges, and the lesser becomes the credibility of the juror's purported forgetfulness.

*Id.*

■■■ Defendants argue Yancy's nondisclosure was prejudicial because she was sued by

a hospital and the defendants in this case were a doctor and another hospital. This is a medical malpractice action. Yancy was sued by Lindell Hospital for an unpaid bill. "[F]ailure of a juror to admit that he or she was sued on an over-due charge account ... in response to the common question regarding involvement in lawsuits is generally no indication the juror could not or would not sit impartially upon a tort action seeking damages for personal injury." *Id.* at 766. The fact that she owed money to a health care provider and the fact that a different health care provider was a defendant in this action does not compel an inference of prejudice in this case. No relation or identity was established between the circumstances which gave rise to her overdue bill and the circumstances which gave rise to the malpractice action. No other basis for an inference of prejudice appears from the record. The trial court did not abuse its discretion in denying the motion for new trial.

The judgment notwithstanding the verdict is reversed and the case is remanded to the trial court for entry of judgment in accord with the jury verdict.

KAROHL and CRAHAN, JJ., concur.