**Christopher J. MOORE and Jolanda Moore, Next Friend and Mother, Plaintiffs–Appellants,**

v.

**Darwin C. JACKSON, M.D., and Jonathan R. Reed OB–GYN Services, Inc., Defendants–Respondents.**

No. 58922.

Missouri Court of Appeals, Eastern District, Division Two.

June 28, 1991.

---

Phillip Arthur Franklin, Robert J. Wynne, Jerome F. Raskas, St. Louis, for plaintiffs-appellants.

William L. Davis, St. Louis, for defendants-respondents.

GARY M. GAERTNER, Presiding Judge.

Appellants appeal from an order of the Circuit Court of the City of St. Louis which granted respondents' motion for new trial. Christopher J. Moore, a minor, brought suit to recover damages from respondents, Dr. Darwin C. Jackson and Jonathan R. Reed OB–GYN Services, Inc., for injuries received during his birth. Jolanda Moore, appellant and next friend for Christopher, sought monetary damages from respondents for medical expenses she incurred on behalf of Christopher, her son, and for loss of consortium.

A jury trial was held beginning on May 14, 1990. On May 21, 1990, the jury returned a verdict awarding Christopher $1,250,000 (one million two hundred fifty thousand dollars) and awarding Jolanda $50,000 (fifty thousand dollars). A hearing on respondents' motion for new trial was held on July 20, 1990, and on August 10, 1990, the court granted respondents' motion. The court based its judgment on improperly submitted verdict directors, im-

proper damage instructions and upon a juror's failure to disclose her involvement in prior lawsuits when questioned during voir dire. A brief recitation of the facts follows.

In June of 1983, appellant, Jolanda Moore, was diagnosed by respondent, Dr. Jackson, as being pregnant. Jolanda was seventeen years old, was five feet seven and one-half inches tall and weighed approximately 140 pounds. Dr. Jackson continued to monitor her pregnancy. By Jolanda's projected birthing date, she weighed 212 pounds. Jolanda did not give birth by January 29, 1984, her due date, and Dr. Jackson decided to begin to induce labor on Monday, February 13, 1984. Jolanda did not give birth on February 13, however, and her labor was again induced on February 14. By 2:30 p.m. on the 14th, Jolanda was fully dilated and Dr. Jackson began to deliver Christopher around 3:30 p.m. Even though Jolanda was experiencing labor contractions, Christopher's delivery was not progressing as it should. Dr. Jackson decided to perform a mid-pelvic delivery which consisted of his using a vacuum extractor[1] and forceps to pull the baby through the delivery.

Christopher's right shoulder got stuck on Jolanda's pelvic bone during the delivery and, as a result, Christopher's nerves were permanently damaged. Christopher suffered the permanent loss of a great deal of use out of his entire right arm, hand and fingers. Christopher weighed nine pounds, thirteen ounces at birth. Appellants' theory of liability was that Dr. Jackson should not have utilized the mid-pelvic delivery or, alternatively, should have performed a Cesarean section delivery. Respondent, Jonathan R. Reed OB–GYN Services, Inc., was Dr. Jackson's employer on February 14, 1984.

During voir dire, appellants' attorney asked the venire whether any of them had ever been a defendant or a plaintiff in a civil law suit. By our count, eleven jurors answered in the affirmative. Among these responses, six venirepersons responded with personal injury lawsuits regarding automobiles, two venirepersons related that they had been involved in suits involving contracts, one member of the venire disclosed a claim for workers' compensation and another venireperson indicated that he had been a defendant in a small claims lawsuit some ten years ago. In addition, a venireperson stated that she was involved in an automobile claim for her injuries that did not result in a lawsuit.

It was later learned that two jurors failed to disclose during voir dire their prior litigation history.[2] During a hearing held regarding respondents' motion for new trial, Juror Katherine Sipes stated that she failed to disclose that she had been sued by Deaconess Hospital in October of 1988 for unpaid medical bills which arose from the birth of her child by Cesarean section. Juror Sipes also did not state during voir dire that she filed for protection under Chapter 13 of the bankruptcy code prior to the Deaconess suit proceeding to trial and she did not disclose she went to court to inform the attorney representing Deaconess she was entering Chapter 13.

In addition to the above, in July of 1989, Kohner Properties filed a rent and possession suit against Ms. Sipes for failure to pay rent. Ms. Sipes indicated during the post-trial hearing she went to court in August of 1989 and signed a consent judgment for the rent amount and for court costs and attorney's fees. Again, in November of 1989, Ms. Sipes was sued for rent and possession by Kohner and she entered another consent judgment in December.

---

1. A vacuum extractor, as its name implies, is placed on the baby's head and the machine, when turned on, creates air pressure to help pull the baby out of the mother's womb.

2. Juror Ronald Sparks indicated during a hearing held regarding respondents' motion for new trial that he and a former roommate had filed suit to recover their personal property from a former landlord who had withheld the property in a rent dispute. The trial court found that Ronald Sparks' nondisclosure was unintentional, found that the lawsuit was inconsequential and determined that his nondisclosure was not prejudicial. No appeal is made from this ruling.

Ms. Sipes' explanation for not disclosing her rent and possession suits or the claim by Deaconess for medical expenses was that she, quite simply, did not consider them to be lawsuits, but merely bills. She also claimed at one point to be unsure of the distinction between a civil and criminal lawsuit. The trial court found Juror Sipes' nondisclosure was intentional, that Ms. Sipes possessed no reasonable inability to comprehend the questions asked during voir dire and her assertion that she considered the suits to be bills was unreasonable. The court found Ms. Sipes' intentional nondisclosure deprived both litigants of the opportunity to exercise their peremptory challenges or challenges for cause in an intelligent and meaningful manner. Appellants appeal asserting that Ms. Sipes' nondisclosures were unintended and assert the court should not have inferred bias and prejudice even if her nondisclosures could be classified as intentional.

██ Intentional nondisclosure occurs where there is 1) no reasonable inability of the juror to comprehend the information sought by the attorneys' questions and 2) where it is shown that the juror actually remembers the experience or her forgetfulness is unreasonable. *Washburn v. Medical Care Group*, 803 S.W.2d 77, 80 (Mo. App., E.D.1990). Conversely, unintentional nondisclosure occurs where the undisclosed matter was insignificant or remote in time or where the venireperson reasonably misunderstands the question. *Id.* The determination that a venireperson intentionally or unintentionally failed to disclose matters asked during voir dire is left to the sound discretion of the trial court, only to be disturbed on appeal upon a showing of an abuse of discretion. *Id.; Williams by Wilford v. Barnes Hospital*, 736 S.W.2d 33, 36 (Mo. banc 1987).

██ In our case, appellants' counsel, during voir dire, asked the venire whether they had been involved in criminal or civil lawsuits as plaintiff or defendant. As already noted, several of the venire disclosed their participation in civil lawsuits, including cases in small claims court and actions on contracts. Appellants claim that Ms.

Sipes did not clearly understand the distinction between a criminal and civil lawsuit, as she claimed at the post trial hearing.

However, the record clearly supports the court's determination that Ms. Sipes possessed no reasonable inability to comprehend the attorneys' questions. Earlier during voir dire, Ms. Sipes, in response to appellants' attorney's queries, disclosed that she had been a member of a jury in a criminal trial. Moreover, Ms. Sipes is a corrections officer at the city workhouse and has three years of college course work behind her. Ms. Sipes possesses an Associate's Degree in criminal justice.

After Ms. Sipes indicated at the post-trial hearing that she did not clearly understand the difference between a civil and a criminal lawsuit, she gave an accurate, concise distinction between them:

Civil, I think, it means somebody's suing somebody. Somebody's suing. Criminal is when somebody commits a crime.

Appellants' claim Ms. Sipes did not comprehend the information sought during voir dire unduly taxes our credulity. *Anderson v. Burlington Northern Railroad Co.*, 651 S.W.2d 176, 180–81 (Mo.App., E.D.1983).

Ms. Sipes' claim during the post-trial hearing that the three, very recent actions did not even come to her mind during voir dire is not credible either. The trial court found in its order that Ms. Sipes remembered the lawsuits but treated them as insignificant. Indeed, Ms. Sipes treated them as merely unpaid bills.

The reasonableness of her claim, that these were bills and not lawsuits, was specifically rejected by the trial court. The discretion afforded the trial court in assessing the believability of the juror in question is unquestionably great (*Washburn*, 803 S.W.2d at 83), yet there also exists ample objective indications rebutting her claim.

Ms. Sipes testified she went to court to talk to the attorney handling the Deaconess lawsuit to inform him of her bankruptcy filing. She also appeared in court to sign the consent judgment in the November, 1989, rent and possession suit. While it appears from the record Ms. Sipes was not represented by an attorney on the two

rent and possession suits, appellants' attorney during voir dire advised the venire that they did not have to be represented by an attorney in order for them to be involved in a lawsuit. The court's determination that Ms. Sipes intentionally withheld information during voir dire was not an abuse of discretion.

Some of the numerous nondisclosure cases have suggested a finding of intentional nondisclosure was "tantamount to a per se rule mandating a new trial." See *Williams by Wilford*, 736 S.W.2d at 37. However, our most recent cases aptly distinguished the per se cases as cases possessing facts which left no doubt as to the motives of the offending juror or cases which clearly contained a likelihood the undisclosed information may have affected the outcome of the trial. *Alexander v. F.W. Woolworth Co.*, 788 S.W.2d 763, 766 (Mo.App., E.D.1990) (*Alexander* contains an excellent examination of the per se cases). This court in *Alexander* and in *Washburn*, clearly indicated that the fact finder *may* infer bias and prejudice from an intentional nondisclosure, but is not required to do so. *Washburn*, 803 S.W.2d at 81.

In the case at bar, the trial court did infer the existence of bias and prejudice from the intentional nondisclosure. There are plenty of factors which support the trial court's discretionary inference of bias and prejudice. The unreasonableness of Ms. Sipes post-trial explanations for not disclosing three[3] prior lawsuits enhances the inference. *Alexander*, 788 S.W.2d at 768. The extent of the enhancement is within the trial court's discretion, as is the credibility of the juror's explanation for withholding the requested information.

The unpaid Deaconess medical bill was for the birth of her second son. This birth was not a smooth one and was accomplished by Cesarean section. Thus, while the lawsuit itself was not similar to the medical malpractice claim in the present case, the reason for the Deaconess bill was remarkably similar. See *Washburn*, 803 S.W.2d at 81 (the most significant circum-

stance in evaluating the existence of an inference of bias and prejudice is the similarity between the undisclosed experience and the case being considered).

We do point out, however, that Ms. Sipes did disclose her Cesarean delivery to appellants' attorney later during the voir dire. She claimed to have been satisfied with her treatment. What was not disclosed was a negative aspect of her care and treatment; a large unpaid medical expense.

The respondents also emphasize that Juror Sipes' treatment took place at Deaconess Hospital, where Dr. Jackson now has an office. However, we agree with appellant that this fact was not disclosed by either attorney during voir dire, so this fact does not have any bearing on Ms. Sipes' motive for not disclosing the Deaconess bill.

Yet, respondents' attorney clearly knew of his client's current business affiliation and Ms. Sipes' nondisclosure deprived him of the opportunity to strike a potential juror with an outstanding Deaconess bill.

While there is no paucity of juror nondisclosure claims, each depends on its own facts and hinges on the ability of the trial court to gauge the demeanor and credibility of witnesses regarding whether the nondisclosure was intended and whether to infer bias and prejudice. *Washburn*, 803 S.W.2d at 83. We do not find an abuse of the court's discretion in the present case.

Having determined that a new trial was properly granted by virtue of the intentional nondisclosure, we decline to address appellant's other two claims of error concerning the tendered jury instructions. The issues involved hinge upon the facts which developed at trial, which may change upon retrial.

The judgment of the court granting a new trial is affirmed.

CRIST and AHRENS, JJ., concur

---

3. The trial court, in its order, erroneously stated that Ms. Sipes had failed to disclose her involve-

ment in four lawsuits. The error is inconsequential.