John E. TOPPINS, Plaintiff–Appellant,

v.

Jeffrey O. SCHUERMANN and Industrial And Petroleum Environmental Services, Inc., Defendants–Respondents.

No. 73750.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 22, 1998.

James F. Koester, St. Louis, for appellant.

William F. James, St. Louis, for respondent.

LAWRENCE E. MOONEY, Judge.

John Toppins ("Plaintiff") appeals from the Judgment and Order of the trial court granting the Joint Motion of Defendants for a New Trial ("Motion for New Trial"). We reverse.

Plaintiff sued Jeffrey Schuermann and Schuermann's employer, Industrial and Petroleum Environmental Services, Inc., ("Defendants") for personal injuries sustained in an automobile accident. The case was tried before a jury, which returned a verdict of $150,000.00 on August 21, 1997. On September 9, 1997, Defendants filed a Motion for New Trial alleging the following trial errors, among others:

1. The amount of the verdict in favor of the Plaintiff and against the Defendants is excessive.

2. The amount of the verdict in favor of the Plaintiff and against the Defendants is so excessive as to affirmatively demonstrate bias and prejudice against the Defendants.

3. The Court erred in overruling Defendants' objections to the reference to the Defendants and/or defense counsel as the "corporate" Defendants and/or the "corporate" Defendants' attorney and/or said references constituted plain error, the sole purpose thereof being to inflame the jury and engender bias and prejudice against the Defendants...

5. One or more venire persons (sic), or members of their immediate family, may have incorrectly, inadvertently and/or deliberately failed to reveal during voir dire examination, in response to appropriate questions to that effect, that they or members of the immediate family had been, in the past, plaintiffs in a personal injury lawsuit and/or had a claim for personal injury, thereby misleading defense counsel and denying the Defendants a full, fair and impartial jury.

The trial court entered judgment on the jury verdict on September 12, 1997. On December 1, 1997, the trial court granted Defendants' Motion for New Trial on the following grounds:

1. The verdict is against the weight of the evidence, given that the verdict of $150,000.00 is excessive in light of the evidence showing approximately $8,000.00 in special damages and little need for future medical treatment.

2. Intentional references by plaintiff's counsel to the "corporate defendant" and "corporate defense counsel" may have inflamed the jury and caused bias and prejudice against the defendants.

3. During voir dire, venireperson Shirley Lewis, who served as a juror, failed to disclose relevant, material information concerning a pending claim in response to clear questions. Her nondisclosure was intentional and therefore bias and prejudice are presumed.

4. During voir dire, venireperson Patricia Guerin, who served as a juror, failed to disclose relevant, material information concerning her husband's prior personal injury claims in response to clear questions. Her nondisclosure was intentional and therefore bias and prejudice are presumed.

Plaintiff timely filed this appeal, asking us to reverse the judgment of the trial court granting the motion for new trial and to reinstate the jury's verdict.

*ANALYSIS*

In ruling upon a motion for new trial, the trial court is vested with broad discretion. *Hyde v. Butsch,* 861 S.W.2d 819, 820 (Mo.App. E.D.1993). Abuse of discretion occurs:

"...when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack a careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

*Wingate v. Lester E. Cox Medical Center*, 853 S.W.2d 912, 917 (Mo. banc 1993). Appellant bears the burden of proving that the trial court abused its discretion in granting the motion for the stated reasons. *Hyde*, 861 S.W.2d at 821. Reviewing courts are more liberal in upholding the trial court's grant of a motion for new trial than its denial. *Id.* at 820. However, when reviewing the grant of a new trial following a verdict in favor of plaintiff, we view the evidence and all inferences therefrom in the light most favorable to plaintiff. *Luyties Pharmacal Co. v. Frederic Co., Inc.*, 716 S.W.2d 831, 833 (Mo.App. E.D.1986). With these principles in mind, we turn to the specific allegations of error in this case.

## Against the Weight of the Evidence

■ In his first point of error, Plaintiff contends that the trial court erred in granting a new trial on the ground that the verdict was against the weight of the evidence, because Defendants failed to raise this claim in their Motion for New Trial, and the new trial was granted more than 30 days after the court entered judgment on the jury verdict.

■■ The trial court has thirty days after the entry of judgment in which to grant a new trial on its own initiative. Rule 75.01. The court acts on its own initiative when it grants a new trial on any ground not contained in the motion for new trial. *Stretch v. State Farm Mut. Auto. Ins. Co.*, 645 S.W.2d 729, 731 (Mo.App. E.D.1983); *Sondergard v. Kansas City Power & Light Co.*, 826 S.W.2d 20, 22 (Mo.App. W.D.1992). After the expiration of that thirty-day period, the trial court is limited to granting the relief sought by one of the parties based on the grounds properly preserved and set forth in that party's motion for new trial. *Id.*

In this case, the trial court entered judgment on the jury verdict on September 12, 1997. However, the order granting the Defendant's Motion for New Trial was not entered until December 1, 1997, outside the thirty-day period during which the court had jurisdiction to order a new trial *sua sponte*. As such, the court was limited to granting a new trial on the grounds raised in Defendants' Motion for New Trial.

■ Again, the trial court granted a new trial in part on the ground that the verdict was "against the weight of the evidence... given that [it was] excessive." We note that the trial court has broad discretion to grant a new trial on the ground that the verdict is against the weight of the evidence under Rule 78.02. If the trial court properly grants a new trial on such grounds, we will not interfere. *Brown v. Lanrich*, 950 S.W.2d 235, 236 (Mo.App. E.D.1997).

Plaintiff asserts that because the thirty-day period had expired at the time of entry of the judgment granting the Motion for New Trial, and because "against the weight of the evidence" was not raised in Defendants' Motion for New Trial, the trial court was without jurisdiction to grant a new trial on such ground. We feel that Plaintiff has oversimplified the issue.

■ A claim that the verdict is against the weight of the evidence within the meaning of Rule 78.02 is a much broader claim than one of mere excessiveness of the verdict. A claim that the verdict is against the weight of the evidence under Rule 78.02 can challenge both a finding of liability and the calculation of damages. In contrast, a claim of mere excessiveness in amount challenges the calculation of damages only. *Koehler v. Burlington Northern Inc.*, 573 S.W.2d 938, 945 (Mo. App. E.D.1978). Here, the broader "against the weight of the evidence" claim was not preserved in Defendant's Motion for New Trial. Although there is a line of Missouri cases which hold that a claim of excessiveness in amount is essentially a claim that the verdict is against the weight of the evidence, *see Smith, By and Through Smith, infra*, we decline to hold that a bare claim of excessiveness in a motion for new trial preserves the trial court's broad authority to overturn a

verdict as against the weight of the evidence under Rule 78.02.

In this regard, it must be noted that Defendant's Motion for New Trial makes no claim that the verdict is against the weight of the evidence and makes no reference to Rule 78.02. A motion for new trial should fairly apprise the court, the parties and their attorneys of any error claimed or relief sought. *Bowman v. Burlington Northern, Inc.*, 645 S.W.2d 9, 11 (Mo.App. E.D.1982). Although liability was not at issue here, a claim of mere excessiveness alone does not fairly give notice that the relief sought, and in the case at bar granted, may extend to the issue of liability as well as damages.

Moreover, Missouri case law, although somewhat muddled, does not treat the terms as synonymous. A claim in a motion for new trial that a verdict is against the weight of the evidence is insufficient to raise the question of the excessiveness thereof on appeal. *See Johnson v. Flex–O–Lite Corp.*, 314 S.W.2d 75, 85 (Mo.1958); *Crawford v. McNece*, 388 S.W.2d 809, 816 (Mo.1965). The Western District has apparently held that a claim of excessiveness in amount is not a claim that a verdict is against the weight of the evidence. *Boyer v. Grandview Manor Care Center, Inc.*, 759 S.W.2d 230, 233 (Mo. App. W.D.1988). Our court upheld the adequacy of a motion for new trial that claimed plaintiff's "damages theory was based on conjecture and speculation, as it lacked complete evidentiary support" to preserve a claim that the verdict was against the weight of the evidence, where the relief sought and granted was a new trial on damages alone. *Resnik v. Blue Cross and Blue Shield of Missouri*, 912 S.W.2d 567, 571 (Mo.App. E.D. 1995).

In the case at bar, the bare claim of excessiveness raised in Defendant's Motion For New Trial does not preserve a claim that the verdict was against the weight of the evidence under Rule 78.02 and cannot support the trial court's grant of a new trial on all issues. Thus, the claim preserved by Defendants' Motion for New Trial was a claim that the verdict was excessive.

### Excessiveness of the Verdict

Missouri courts distinguish between two types of claims of excessiveness. The first is a claim that the verdict is merely excessive in amount; the second is a claim that the verdict is so grossly excessive as to indicate jury prejudice. *Smith, By and Through Smith v. Archbishop of St. Louis on behalf of Archdiocese of St. Louis*, 632 S.W.2d 516, 524 (Mo.App. E.D.1982). In this case, Defendants raised claims of both types of excessiveness in their Motion for New Trial.[1] We believe that in granting the Motion in part on the ground that the verdict was "against the weight of the evidence... given that [it was] excessive," the trial court was merely indicating the type of excessiveness on which the Motion was being granted. In other words, the trial court used the words "against the weight of the evidence" to explain that the verdict was merely excessive in amount, rather than so excessive as to indicate bias or prejudice. Thus, the issue before us is whether the trial court abused its discretion in granting a new trial on the ground that the verdict was excessive in amount, an issue raised by Plaintiff in a separate point on appeal.

"The decision to grant a new trial based on the size of the verdict rests with the trial court." *Heins Implement Co. v. Missouri Highway & Transp. Com'n*, 859 S.W.2d 681, 692 (Mo.1993). We defer to the superior ability of the trial court to judge the credibility of the witnesses and to assess the impact of alleged trial errors upon the jury. *Id.* The appellate court relies on the trial judge, who is in a better position to assess the amount of the verdict. *Smith v. Kovac*, 927 S.W.2d 493, 499 (Mo.App. E.D.1996).

---

1. The Defendants' first point of error in their motion for new trial raises the claim of excessiveness. It does not explicitly state the type of excessiveness complained of. We infer that Defendants' claim is of excessiveness in amount due to the juxtaposition with Defendants' second point of error of excessiveness due to bias and prejudice. We note that a claim of mere excessiveness does not preserve a claim of gross excessiveness. *Crawford v. McNece*, 388 S.W.2d at 816.

If the verdict is the result of bias or prejudice, then the judgment can only be remedied through the grant of a new trial. *Fust v. Francois*, 913 S.W.2d 38, 49 (Mo.App. E.D.1995). However, if the jury errs by awarding a verdict that is simply disproportionate to plaintiff's damages based on the evidence adduced at trial, the error can be corrected by ordering remittitur. *Id.* A new trial is unnecessary, because the jury has not engaged in misconduct but rather has made an honest mistake as to the nature and extent of plaintiff's damages. *Id.* Where the trial court does not find that the verdict is so excessive as to indicate bias or prejudice on the part of the jury, the trial court is not justified in granting a new trial, even restricted to the issue of damages, merely because of the size of the verdict. *Bodimer v. Ryan's Family Steakhouses, Inc.*, 978 S.W.2d 4, 9 (Mo.App. E.D.1998). Although the trial court may find bias or prejudice based solely upon the size of the verdict, where the trial court makes no such finding, we defer to the trial court and will not find bias or prejudice from the amount of the verdict alone. *White v. St. Louis–San Francisco Railway Co.*, 602 S.W.2d 748, 754 (Mo. App. E.D.1980); *Smith v. Kovac*, 927 S.W.2d at 499.

In this case, the trial court made no express finding of bias or prejudice based on the size of the verdict alone. To the contrary, in holding that the verdict was "against the weight of the evidence given that [it was] excessive," the trial court indicated that it was not finding bias or prejudice on the part of the jury based solely upon the size of the verdict. Instead, the trial court cited three trial errors to justify its grant of a new trial: references during trial by plaintiff's counsel to "the corporate defendant" and the failure of two venirepersons to disclose information on voir dire. We will discuss each of these alleged trial errors in turn.

### References to the Corporate Defendant

The trial court found that intentional references during trial by "plaintiff's counsel to the 'corporate defendant' or 'corporate defense counsel' *may* have inflamed the jury and caused bias or prejudice against the defendants." (Emphasis ours.) Plaintiff argues that the trial court erred and abused its discretion in granting a new trial on this ground, because the issue was not preserved in Defendants' Motion for New Trial, and because such references were not prejudicial. We do not reach the question of whether the trial court abused its discretion in determining that the references were prejudicial, because the trial court did not make a determinative finding that the references were, in fact, prejudicial. Its use of the term "may" indicates only the possibility of prejudice, not the existence of prejudice. As so stated, this ground is insufficient as a basis for the award of a new trial. The trial court abused its discretion in ordering a new trial on the ground that defendants "may" have been prejudiced.

### Nondisclosures of Venireperson Shirley Lewis

The second trial error found by the trial court was the intentional failure of venireperson Shirley Lewis to disclose information concerning a pending personal injury claim on voir dire. Plaintiff asserts that the trial court abused its discretion in granting the Motion for New Trial on the basis of Venireperson Shirley Lewis' failure to disclose a pending claim, because: 1) there was no claim to disclose; 2) any nondisclosure was unintentional; 3) any nondisclosure was the result of her not understanding the questions posed to her on voir dire; 4) any nondisclosure was not material or relevant; and 5) the allegation was not specifically pled in the Motion so it was not preserved.

Plaintiff's fifth argument can be dealt with summarily. Plaintiff essentially contends that Defendants should have identified the specific jurors who allegedly failed to disclose matters on voir dire. This precise issue was addressed in *Williams By and Through Wilford v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo.1987). In that case, the Defendant alleged in its Motion for New Trial:

"Defendant was denied its Constitutional rights to an impartial panel of twelve jurors because one or more of the jurors failed to truthfully respond to questions

asked during voir dire concerning prior claims, litigation and involvement with Barnes Hospital."

The Missouri Supreme Court held that although the individual jurors were not specifically identified in the motion for new trial, the allegation of error was sufficiently stated to preserve the matter of the jurors' nondisclosure on voir dire. *Id.*

In the instant case, the Defendants' Motion again states:

One or more of the venire persons (sic), or members of their immediate family, may have incorrectly, inadvertently and/or deliberately failed to reveal during voir dire examination, in response to appropriate questions to that effect, that they or members of their immediate family had been, in the past, plaintiffs in a personal injury lawsuit and/or had a claim for personal injury, thereby misleading defense counsel and denying the Defendants a full, fair and impartial jury.

The above-quoted language is sufficiently specific to survive scrutiny under *Williams.*

 More difficult questions are presented by the Plaintiff's remaining arguments, which will be discussed together. All three arguments concern the fundamental question of whether Ms. Lewis' nondisclosure of a pending claim was intentional.

 Intentional nondisclosure occurs: 1) where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror; and 2) where it develops that the prospective juror actually remembers the experience or that it was of such significance that her purported forgetfulness is unreasonable. *Brines By and Through Harlan v. Cibis,* 882 S.W.2d 138, 139 (Mo.1994). Conversely, a nondisclosure is considered unintentional where, for example, the experience forgotten was insignificant or remote in time, or where the venireperson reasonably misunderstands the question posed. *Williams,* 736 S.W.2d at 36. The determination of whether a nondisclosure is intentional is left to the discretion of the trial court and will be disturbed on appeal only if abuse of that discretion has occurred. *Id.*

During the voir dire examination in the trial of this case, counsel for Defendants posed the following question:

"A number of you have told us about instances where you or members of your family were injured, and that's fine. I want to ask that question once again though, because it's a very important question. Because if it turns out later that you or a member of your family had a claim for personal injury that you didn't tell us about, there is the possibility that we would have to do this entire process all over again. And Mr. Belliveau doesn't want that, and I don't want that, and I'm sure you don't want that.

And the beauty of this process is—as Mr. Belliveau alluded to—sometimes a question will be asked you and it won't mean a thing, but, then, another member of the jury panel will say something that causes the light bulb to go off. Should that occur, please raise your hand and we'll take it up at that time.

With that background – and I'm talking to those people who haven't told us about it already – is there any member of the jury panel who has had a claim for personal injury? That is, you have injured yourself in any way, shape, or form. It might have been an automobile accident; perhaps you fell down and injured yourself; ate something that disagreed with you and maybe it was a medical malpractice situation; whatever it might be, and as a result of being injured or having sustained an injury, you made a claim against somebody for that injury. Anybody whose had that experience? And here again, if you've already told us about it, you don't have to tell us again."

In response to a previously asked question, Ms. Lewis had revealed that she sustained injuries in an automobile accident in 1976, but she volunteered no information in response to the question quoted at length above. In their Motion for New Trial, Defendants alleged that Ms. Lewis failed to reveal the details of a work-related carpal tunnel injury. When the Motion for New Trial was heard, Ms. Lewis was called to testify about her nondisclosure of this inci-

dent. Ms. Lewis stated that she remembered being asked on voir dire whether she or any member of her immediate family had any claims for personal injury or had been a plaintiff in a personal injury action. Ms. Lewis also stated that she recalled other jurors disclosing the details of their workers' compensation claims on voir dire in response to this and other questions. However, Ms. Lewis explicitly stated that she did not understand the questions to refer to her situation, because she had never filed a claim for compensation in relation to her injuries.

At the hearing on the Motion for New Trial, Ms. Lewis testified that her employer reported her carpal tunnel injuries to its workers' compensation insurance carrier and sent her for a medical examination. She stated that the examining physician told her at that time that her carpal tunnel wrist problem was not a valid claim. Apparently, this situation was ongoing as of the date of trial of this case. However, Ms. Lewis stated that because she was told by the doctor during her initial visit that she did not have a valid claim for workers' compensation, at the time of voir dire, she thought the matter was concluded. When asked by defense counsel whether she realized that there were ongoing discussions about whether or not there was in fact a valid claim, Ms. Lewis responded, "See, I don't understand. I don't understand this." Defense counsel responded, "I understand. I can believe that. Go ahead." Ms. Lewis stated that she never spoke to anyone at the insurance company about the matter, although she did receive a letter from them stating that no valid claim existed. The insurance company representative corroborated Ms. Lewis' testimony on this point.

Based on the foregoing facts, we conclude that Ms. Lewis reasonably misunderstood the question posed. She states at numerous points in the record that she did not consider this a workers' compensation claim. Ms. Lewis not only thought the matter was concluded, but she had specifically been told by a doctor that this was not a valid workers' compensation claim. She explicitly states that she did not understand the whole line of questioning, and defense counsel acknowledged his belief in her confusion. Ms. Lewis'

confusion likely stems from the fact that she did not have a "claim" to reveal as that word is commonly understood. A "claim" is a demand for compensation or payment. *Webster's New International Dictionary* (3 rd ed.1967). Ms. Lewis obviously made no such claim. She was injured as a result of her work. Her employer reported her injury to its insurance carrier, as it is required to do under Section 287.380.1 RSMo. (1994), and then sent her to a doctor for tests. This is not the equivalent of an employee filing a Claim for Compensation under the workers' compensation laws.

Looking at the totality of the circumstances, we believe that no reasonable person could understand Ms. Lewis to have intentionally concealed this matter on voir dire.

▓▓▓▓ Where nondisclosure is found to be both unintentional and reasonable, the relevant inquiry becomes whether the juror's presence did influence the verdict or may have influenced the verdict so as to prejudice the party seeking a new trial. *Rogers v. Bond,* 880 S.W.2d 607, 611 (Mo.App. E.D. 1994). One of the factors for consideration is the materiality and relevance of the undisclosed experience. *Id.* As the similarity between the undisclosed experience and the case at hand increases, so does the inference of bias and prejudice, the impairment of counsel's ability to make informed peremptory challenges, and the incredibility of the juror's purported forgetfulness. *Id.* We are convinced that Ms. Lewis' undisclosed experience was immaterial. Ms. Lewis' failure to reveal a work-related carpal tunnel injury is dissimilar to a lawsuit involving back injuries sustained in a car accident. Further, at the hearing on the Motion for New Trial, the trial court heard no evidence and made no findings as to actual prejudice suffered by Defendants by virtue of Ms. Lewis' inclusion in the pool of venirepersons.

Accordingly, we hold that the trial court abused its discretion in granting the Defendants' Motion for New Trial on the basis of Shirley Lewis' failure to disclose this experience on voir dire. However, as noted above, if any of the other grounds for granting the Motion for New Trial are proper, the trial court's judgment must be affirmed. *Doug-*

lass v. Missouri Cafeteria, Inc., 532 S.W.2d 811, 813 (Mo.App.1975).

### Nondisclosure of Venireperson Patricia Guerin

 Plaintiff raises similar contentions with respect to the trial court's finding that Venireperson Patricia Guerin intentionally failed to disclose material information on voir dire. Plaintiff contends that the trial court abused its discretion in granting a new trial based on Venireperson Patricia Guerin's failure to disclose pending personal injury claims because 1) she did disclose the claims of her husband; 2) any nondisclosure was unintentional or the result of not understanding the question posed to her on voir dire; 3) any nondisclosure was not material or relevant and was remote in time; and 4) the allegation was not specifically pled in the Motion for New Trial, and therefore was not preserved.

At the voir dire examination, it appears that Ms. Guerin disclosed a workers' compensation claim of her husband which had occurred approximately one-and-a-half years prior to the date of trial. She stated that her husband had been involved in an accident with a Ryder truck. Defendants allege, and the trial court found, that she intentionally failed to disclose three other work-related injuries sustained by her husband.

Plaintiff's fourth argument under this Point is without merit. Pursuant to *Williams By and Through Wilford v. Barnes Hospital, supra,* the allegation of error was stated in the Motion for New Trial in a manner sufficiently specific to be preserved.

As with his contentions relating to Ms. Lewis, Plaintiff's remaining arguments under this Point present more difficult issues. Again, we will address the remaining issues collectively.

At the hearing on Defendant's Motion for New Trial, testimony was taken of a representative of Bi-State Development Agency, Mr. Guerin's employer. The Bi-State representative testified that Ms. Guerin's husband had filed four claims for work-related injuries, only one of which Ms. Guerin disclosed on voir dire.

The first claim involved an incident in which Mr. Guerin fractured his finger in November 1992. It is noteworthy that Mr. and Mrs. Guerin were not married at the time of this incident. When initially asked whether she could recall the incident at the hearing on the Motion for New Trial, Ms. Guerin responded, "You may be able to refresh my memory." After defense counsel detailed the facts of the claim, Ms. Guerin stated that she did remember the matter.

The Bi-State representative testified that Mr. Guerin also filed a claim for back injuries resulting from a hit-and-run automobile accident in January 1994. Only lost time and medical expenses were paid on the claim. When defense counsel asked Ms. Guerin about this claim at the hearing on the Motion for New Trial, the following exchange took place:

"Q: Then on January 31 st, 1994, was your husband involved in another claim against Bi-State involving his low back?

A: When?

Q: January 31 st, 1994.

A: Is that the Ryder truck incident?

Q: Well, I'm not sure. There is another one on March 27, 1995. And when you said a year and a half back, I'm not sure which one you refer to.

A: That could be it. I don't know. I do know that there was – when the truck hit him, there was –

Q: That's the Ryder truck claim you told us about?

A: Uh-huh.

Q: And that was about a year and a half before the accident.

In connection with the claim on January 31 st, 1994, your husband lost about three or four weeks from work as a result of that incident.

A: I mean, maybe. I don't really recall, but it sounds like.

Q: Then there was a claim on March 27 th, 1995. There again, whether March 27 th, 1995 or January 31 st, 1994, is the Ryder truck claim you did tell us about, I'm not sure. But that claim on March

27th, 1995, did your husband injure his back and his neck?

A: I don't know the date when any of this occurred, the exact. I don't want to say something and I can't – I don't want you to hold me to something and it's not absolutely.

Q: No, I'm not trying – my point is that you only told us about one claim that your husband had had.

A: Yeah, uh-huh, and I told you about the most recent that I remembered at the time."

The third work-related injury to which the Bi–State representative testified appears to be the one revealed by Ms. Guerin on voir dire. It was the only one of the four claims for which the Guerins were paid money over and above the amount of medical expenses and lost wages.

The final work-related injury arose when a passenger assaulted Mr. Guerin in August 1996. Mr. Guerin's right hand was injured as a result of the assault. Only medical expenses were paid on this claim. The following exchange took place at the hearing on Defendants' Motion for New Trial:

"Q: All right. Do you recall a claim your husband had on August 4th, 1996, when he was assaulted at work?

A: There was a claim. I do know that a—I don't know if it was a passenger or what-have-you, did attack my husband on his break.

Q: You didn't tell us about that, did you, on during your examination?

A: No. Was that some type of a claim, or was that just somebody attacking him or something?"

At the hearing on the Motion for New Trial, Ms. Guerin, like Ms. Lewis, stated that she remembered being asked on voir dire whether she or members of her immediate family had ever had any claims for personal injury or been a plaintiff in a personal injury suit. When asked why she failed to reveal these additional incidents, Ms. Guerin responded, "I told you about the most recent that I could remember." She stated, "I answered the questions and if I thought of something, I told you what I could think of at the time." She says she did the best she could to search her memory during the voir dire examination.

We believe that Ms. Guerin's failure to disclose these additional claims was unintentional. With respect to the 1992 claim, which involved a fractured finger, Ms. Guerin did not recall the claim until specifically reminded of the pertinent facts of the claim at the hearing on the Motion for New Trial. It is perfectly reasonable that a venireperson would forget a minor injury of their spouse that had occurred prior to the parties' marriage.

With respect to the 1994 hit-and-run incident, it is clear from the testimony taken at the hearing on the Motion for New Trial that Ms. Guerin was confused about the details of this incident. She never states affirmatively that she remembers this claim. Rather, it appears that the details of 1994 and 1995 claims were combined in Ms. Guerin's mind.

Ms. Guerin also was confused as to whether a claim had been filed on the 1996 incident involving the assault on her husband. She stated at the hearing on the Motion for New Trial, "Was that some type of a claim, or was that just somebody attacking him or something?" Given the fact that only lost wages and medical expenses were paid on this claim, we believe that Ms. Guerin did not realize that her husband had filed a claim with respect to this matter.

Again, where nondisclosure is found to be both unintentional and reasonable, the relevant inquiry becomes whether the juror's presence did influence the verdict or may have influenced the verdict so as to prejudice the party seeking a new trial. *Rogers v. Bond*, 880 S.W.2d at 611. One of the factors for consideration is the materiality and relevance of the undisclosed experience. *Id.* As the similarity between the undisclosed experience and the case at hand increases, so does the inference of bias and prejudice, the impairment of counsel's ability to make informed peremptory challenges, and the incredibility of the juror's purported forgetfulness. *Id.*

■ We fail to see how the incidents involving a fractured finger and the assault

on Ms. Guerin's husband could render Ms. Guerin unable to sit impartially in this case. An assault is an intentional act that is not likely to prejudice a juror in a case involving injuries sustained in an automobile accident arising out of negligence. It is unclear from the record how Mr. Guerin fractured his finger, but we doubt that such a minor work-related injury to a finger would prejudice a juror in a lawsuit for back injuries resulting from an automobile accident.

 Although the final incident which Defendants allege that Ms. Guerin failed to disclose on voir dire involved back injuries sustained in an automobile accident and thus might be potentially prejudicial, we are not convinced that Ms. Guerin failed to reveal this incident. Again, we believe that Ms. Guerin confused the details of the 1994 and 1995 incidents in her mind. Defense counsel concedes this during the hearing on the Motion for New Trial when he states, "Then there was a claim on March 27 th, 1995. There again, whether March 27 th, 1995 or January 31 st, 1994, is the Ryder truck claim you did tell us about, I'm not sure." It is interesting that defense counsel did not move to strike Ms. Guerin following her disclosure on voir dire, so it appears that defense counsel did not view this experience as something likely to prejudice a juror. We cannot say that this undisclosed incident, if indeed it was undisclosed, likely prejudiced Ms. Guerin in this matter. Once again, the trial court heard no evidence and made no findings of actual prejudice to the Defendants.

Thus, the trial court abused its discretion in granting the Motion for New Trial on the ground that Ms. Guerin intentionally failed to disclose these incidents on voir dire.

## CONCLUSION

Because the trial court did not find that the verdict was so excessive as to indicate bias or prejudice on the part of the jury, the grant of a new trial was not justified without trial error. *Bodimer*, 978 S.W.2d at 9. We have held above that none of the claimed trial errors cited by the trial court in support of its grant of a new trial are sufficient to justify that remedy. The trial court made no determinative finding of bias or prejudice

based on Plaintiff's counsel's references to the "corporate defendant" or "corporate defense counsel," and the failure of the two venirepersons to reveal work-related injuries on voir dire was unintentional and reasonable. Accordingly, we reverse the judgment of the trial court granting Defendants' Motion for New Trial, and remand the case to the trial court for entry of judgment in accordance with the jury verdict.

SIMON, P.J., and CRANE, J., concur.