**Damon STEELE, individually and as Natural Guardian and Next Friend of Denver John Steele, a minor, Appellants,**

v.

**EVENFLO COMPANY, INC., Spalding & Evenflo Companies Inc., and Patricia Mullins, Respondents.**

No. ED 82315.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 24, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 6, 2004.

Application for Transfer Denied
Nov. 23, 2004.

Evan A. Douthit, Kansas City, MO, for appellants.

John C. Murphy, Kansas City, Lawrence R. Smith, Clayton, MO, for respondents.

PATRICIA L. COHEN, Judge.

Damon Steele ("Plaintiff"), as next friend and father of Denver John Steele ("D.J."), appeals from the trial court's order granting Defendants Evenflo Compa-

ny, Inc. and Spalding Sports Worldwide ("Defendants") Motion for New Trial.[1] Concluding that the trial court exceeded its jurisdiction when it relied wholly on grounds not specifically asserted in Defendants' Motion for New Trial, we reverse. We have also considered the grounds relied on by the trial court, as well as alternative grounds asserted by Defendants, and find no support for the grant of a new trial.

## BACKGROUND

Plaintiff sued Defendants for injuries that D.J., who was a toddler at the time, sustained as the result of an Evenflo child booster seat which failed in the course of an automobile accident. D.J. was paralyzed from the chest down and suffered other serious injuries. The petition included a claim for punitive damages and Plaintiff adduced evidence on this issue at trial. However, prior to the instruction conference, Plaintiff withdrew his claim for punitive damages. Neither party requested any withdrawal or limiting instruction regarding the Plaintiff's claim for punitive damages. The trial court did not instruct on punitive damages and neither party mentioned punitive damages in closing argument.

Following deliberations, the jury attempted to return a verdict in favor of Plaintiff in the amount of eight and a half million dollars. On the verdict form, the jurors handwrote underneath the words "8.5 million," the following: "4.5 damages, 4 punitive." After an extended discussion with counsel in which Plaintiff urged the trial court to accept the entire verdict of eight and a half million dollars and Defendants urged the trial court to accept a verdict in the amount of four and a half

million dollars, the trial court refused to accept the first verdict.

Following an additional lengthy discussion with counsel, the trial court read an instruction which advised the jury, as follows:

The Court advises that you are not to consider the issue of punitive damages with respect to either defendant during your deliberations. In your verdict, you must award plaintiff such sum as you believe will fairly and justly compensate D.J. Steele for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence.

Neither party objected to the wording of the instruction, although both parties argued that an additional instruction was unnecessary, the jury's intent was clear and the first verdict should be accepted. Following the reading of the instruction, the trial court provided the jury with a written version and ordered the jury to resume their deliberations. Shortly thereafter, the jury returned a second verdict in the amount of eight and a half million dollars. Neither party objected to acceptance of the second verdict. Accordingly, the trial court accepted the second verdict, polled and discharged the jury.

Defendants filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for New Trial. In the Motion for J.N.O.V., Defendants raised thirty-nine separate points. Points one through thirty-one challenged the sufficiency of the evidence to support the submission of strict liability (design defect), negligent design, strict liability (failure to warn), negligent failure to warn and negligence per se.

---

1. In addition to Defendants, Plaintiff also sued Patricia Mullins, his girlfriend at the time and the driver of the vehicle in which D.J. was a passenger. Ms. Mullins admitted fault in her opening statement. She has not appealed.

Defendants asserted in points thirty-two through thirty-six that the trial court erred in rejecting the first verdict and should have entered judgment for four and a half million dollars. Finally, points thirty-seven through thirty-nine alleged that the trial court erred when it denied Defendants' Motions for Directed Verdict. After a careful analysis, the trial court rejected each of Defendants' grounds and denied the Motion for J.N.O.V.

The trial court next addressed Defendants' Motion for New Trial. Defendants asserted the following grounds in support of their Motion for New Trial: (1) juror nondisclosure, (2) inflammatory comment about defendant Mullins during closing argument, (3) improper admission of evidence of similar incidents, (4) improper admission of the Koziatek affidavit, (5) failure to grant Defendants' Motion for Directed Verdict as to liability, (6) failure to grant Defendants' Motion for Directed Verdict with respect to punitive damages, (7) error in giving the Plaintiff's verdict-directing instructions, (8) verdict was against the weight of the evidence, and (9) cumulative effect of the trial errors outlined above.

The trial court considered each asserted ground. On the question of juror nondisclosure, the trial court held that the alleged nondisclosure was unintentional and caused no prejudice. With respect to the evidence of "similar incidents" and the Koziatek affidavit, the trial court declined to reconsider its trial rulings and again rejected Defendants' arguments. In addition, the trial court found no error with respect to the denial of the Motions for Directed Verdict on liability or punitive damages. Likewise, the trial court found no error with respect to the verdict-directing instructions. Finally, the trial court concluded that the verdict was not against the weight of the evidence.

After rejecting each of the asserted substantive grounds of trial error, the trial court considered Defendants' last point: cumulative error. In its Motion for New Trial, Defendants asserted that they were entitled to a new trial "due to the numerous errors as outlined above in Defendants' Motion for New Trial and the Suggestions in Support of Defendants' Motion for New Trial." Defendants described the "numerous errors" which, they asserted, constituted cumulative error as follows:

> ... admission of highly prejudicial, irrelevant, unreliable, and inadmissible evidence and testimony, juror nondisclosure, and inflammatory and unwarranted closing argument. Each of the enumerated evidentiary errors is sufficient, by itself, to entitled (sic) defendants to a new trial. Furthermore, the combination of these deviations, irregularities, mistakes, and errors constitutes an additional independent justification for a new trial in matter. The cumulative effect of these errors irreparably prejudiced defendants and prevented defendants from receiving a fair trial. Therefore, defendants are entitled to a new trial based on the cumulative errors. (citation omitted).

After flatly rejecting each individual error in Defendants' list of "numerous errors," the trial court granted the Motion for New Trial.

The trial court granted the Motion for New Trial because it was "persuaded that it erred in its handling of the jury's two verdicts ...." More specifically, in its lengthy Order Ruling on Defendant's Post–Trial Motions ("Order") the trial court concluded that its errors included: (1) "the Court gave the jury no indication that this issue [of punitive damages] had been removed from the case," (2) "the Court had an obligation to determine the intent of the jury—what did the jurors

mean when they explained their damage amount by breaking it into two components," (3) the brief time the jury used to consider the second verdict "[did] not give the Court confidence that the jury eliminated any 'punitive' element from the damages it awarded," and (4) the court "should have asked each of the nine jurors who signed the first verdict form one or two open-ended questions about what the explanatory language on the form meant." As the trial court finally determined:

> By failing to give the jury clear guidance before it began its deliberations on the status of the punitive damage issue in the case, the Court left the jurors to speculate during their deliberations about how they should deal with the references they heard to the issue and with the evidence that was offered in support of Plaintiff's punitive damages claim.

Sifting through the trial court's analysis of its self-perceived mistakes, three broad bases of error emerge: (1) failure to provide "clear guidance" on the issue of punitive damages before deliberations, (2) failure to properly ascertain jury intent with respect to the first verdict, and (3) failure to eliminate the possibility that the jury's second verdict was free from "punishment."

## STANDARD OF REVIEW

The trial court is vested with broad discretion when ruling on a motion for new trial. *Toppins v. Schuermann,* 983 S.W.2d 582, 585 (Mo.App. E.D.1998). However, the trial court's power to grant a new trial is discretionary only as to questions of fact, not as to questions of law. *Meyer v. McGarvie,* 856 S.W.2d 904, 907 (Mo.App.

E.D.1993). Appellant bears the burden of proving that the trial court abused its discretion in granting the motion for the stated reasons. *Toppins,* 983 S.W.2d at 586. When reviewing the grant of a new trial following a verdict in favor of plaintiff, we view the evidence and all inferences in the light most favorable to plaintiff. *Id.*

## DISCUSSION

### A. The Motion for New Trial

 We first consider whether the trial court had jurisdiction to enter the order at issue here. Following the expiration of the thirty day period after entry of judgment, the trial court is limited to granting the relief sought on the grounds properly preserved and set forth in the moving party's motion for new trial. *Id.; Stretch v. State Farm Mut. Auto. Ins. Co.,* 645 S.W.2d 729, 731 (Mo.App. E.D.1983). Thus, an "order granting a new trial made more than 30 days after the entry of judgment for reasons not stated in [the] Motion for New Trial [is] beyond the court's jurisdiction and void." *Stretch,* 645 S.W.2d at 731–32.

In this case, the trial court entered judgment on the jury verdict on August 30, 2002. The order granting Defendants' Motion for New Trial was not entered until December 13, 2002. Accordingly, the trial court was limited to granting a new trial only on the grounds raised in Defendants' Motion for New Trial.

 None of the assertions of trial error which form the basis for the trial court's grant of the Motion for New Trial appear in Defendants' Motion for New Trial.[2] Indeed, with respect to the first two

---

**2.** We recognize that both Defendants and the trial court refer to the "cumulative effect" of trial error as grounds for a new trial. However, each of the trial errors Defendants as-

serted as a basis for cumulative error, were rejected by the trial court. Where a trial court declines to assign error to any of the grounds raised by a party, cumulative error

grounds—failure to provide "clear guidance" on the issue before deliberations and failure to properly ascertain jury intent with respect to the first verdict—Defendants consistently maintained throughout the trial and post-trial period, positions *contrary* to the grounds relied on by the trial court to support the grant of the Motion for New Trial. The third ground is simply absent in any form resembling the trial court's conclusion.

Throughout the trial and post-trial motions and on appeal Defendants opposed any suggestion that the trial court was required to provide additional guidance, clear or otherwise, to the jury on the issue of punitive damages prior to deliberation. Defendants repeatedly objected to the trial court's decision to give an additional instruction after the first verdict. As Defendants stated in their brief before this Court: "[i]n this case, prior to the jury's initial deliberation, there was no reason for the parties or the court to believe the jury would misunderstand or disregard the court's clear damage instruction." Indeed, Defendants throughout their brief on appeal cogently explained why a party might not want a trial court to discuss an abandoned issue prior to deliberations. For instance, Defendants asserted, "in any case where plaintiff abandons a claim, defendant would be required to speculate, prior to the jury's deliberations, as to whether the jury *might* become confused about a properly submitted issue or instruction, or

*might* refuse to follow an instruction." Likewise, Defendants reminded that "[i]t is well recognized using a withdrawal instruction may confuse the jury by re-raising abandoned issues." Oddly, here we have a case in which the trial court based, in part, its grant of a motion for new trial not only on an error that was not raised in Defendant's Motion for New Trial but that Defendants never considered an error, either at trial or in front of this Court.

A review of the record also reveals that Defendants consistently opposed the second ground used by the trial court to support its grant of the Motion for New Trial. While the trial court concluded it had failed to properly ascertain jury intent after the first verdict,[3] Defendants maintained the entirely opposite position throughout the trial and post-trial period that the jury's intent was clear. At trial, during the colloquy regarding how to handle the first verdict, counsel for Defendants argued that:

> ... it is very clear from what—from what the jury did that their intent was to award an award of four point five in damages consistent with the verdict and consistent with Instruction Number Ten which allowed them to award damages.... I agree with, Your Honor, that you need to look at the intent and what the intent of the jury was with respect to the Instructions they were provided.

cannot be the basis for a new trial. *See Crawford v. Shop 'N Save Warehouse Foods, Inc.,* 91 S.W.3d 646, 652 (Mo.App. E.D.2002). The trial errors used by the trial court to support cumulative error, and which Defendants now advance as proper bases for the grant of the new trial, were never specifically raised by Defendants in their Motion for New Trial and thus do not support the grant of their motion for new trial. *Hall v. Missouri Highway and Transp. Comm'n,* 861 S.W.2d 720, 723 (Mo.App. E.D.1993).

3. The court determined that: "In retrospect and after reviewing the case law and the particular circumstances of this case, the Court now believes that, to determine the true intent of the jury's first verdict, it should have asked each of the nine jurors who signed the first verdict form one or two open-ended questions about what the explanatory language on the form meant."

And they intended to award four point five in damages to D.J.

After the trial court informed counsel of its decision to read the withdrawal instruction and send the jury back for deliberation, counsel for Defendants objected stating: "No objection to the language that the Court is [sic] just read. Just I would incorporate the same objections that we would have to sending it back in the first place. *And I request that the four point five million is the clear intent of the jury with respect to Plaintiff's damages.*" (emphasis added). Moreover, the proposition that the jury's intent was clear formed the basis for a significant aspect of the Motion for J.N.O.V., where Defendants argued that "defendants are entitled to judgment not-withstanding the verdict and the entry of judgment of 4.5 million consistent with the clear intent of the jury." Finally, in their brief on appeal Defendants bluntly state, "[t]he jury's intent in rendering the first verdict was clear."[4] Again, the trial court relied on a ground for reversal that Defendants not only did not raise in the Motion for New Trial but actively objected to at every relevant stage of the litigation.

The third ground for the new trial— failure to confidently eliminate the possibility that the jury's second verdict was free from "punishment"—is also completely absent from the Motion for New Trial. Although Defendants claim in their brief on appeal that they raised in detail in their Motion for New Trial a somewhat similar ground—"jury's improper attempt to award punitive damages,"—a review of the Motion for New Trial reveals otherwise. While it is true that Defendants asserted error with respect to punitive damages, they did so solely in the context of the trial court's failure to grant Defendants' Motion

for Directed Verdict on the issue of punitive damages.

Defendants identified the reasons for the trial court's error in failing to grant their Motion for Directed Verdict as follows: (1) failure to present clear and convincing evidence of each element necessary to submit a claim for punitive damages, (2) failure to present clear and convincing evidence that Defendants had actual knowledge of the defect at the time of the sale, (3) failure to present clear and convincing evidence that the product caused similar injuries, (4) failure to present evidence that Defendants failed to comply with industry standards, (5) failure to present evidence that Defendants had knowledge or reason to know that there was a high probability their conduct would cause injury, (6) failure to present evidence that Defendants showed complete indifference or utter disregard for the safety of others, (7) failure to present evidence that Defendants acted with wantonness or bad motive, (8) failure to present clear and convincing evidence that Defendants' conduct was tantamount to wrongdoing, and (9) failure to present evidence that at the time of manufacture or sale Defendants' conduct was willful, wanton, malicious or reckless. While each of these grounds raised the issue of the trial court's failure to grant the Motion for Directed Verdict on the issue of punitive damages, none can be construed as preserving the issue of the trial court's failure to eliminate the possibility that the jury's second verdict was free from "punishment." Moreover, the trial court specifically rejected its failure to grant the Motion for Directed Verdict on punitive damages as a basis for a new trial.

Having failed to rely on assertions of trial error preserved by the Motion for

---

**4.** Indeed, on appeal, Defendants have requested that we reinstate the first verdict of four and a half million dollars if we overturn the trial court's Order of a new trial.

New Trial to support its Order, the trial court lacked jurisdiction to issue the Order. Accordingly, the Order is void.

## B. The Trial Court's Order

■ Even if we were to consider the grounds relied on by the trial court, we would conclude the trial court erred in ordering a new trial. With respect to the trial court's first concern, we agree with Plaintiff that the trial court did not err by, in the trial court's words, "failing to give the jury clear guidance before it began its deliberations on the status of the punitive damage issue in the case," where Defendants did not seek a withdrawal or limiting instruction on punitive damages.[5] The trial court was concerned about its failure to provide "clear guidance" because it believed "the Court left the jurors to speculate during their deliberations about how they should deal with the references they heard to the issue and with the evidence that was offered in support of Plaintiff's punitive damages claim." By placing the burden on itself to handle the status of the punitive damages claim rather than the parties, the trial court misconceived its duty.

In *Wors v. Glasgow Village Supermarket,* 460 S.W.2d 583, 589 (Mo.1970), the Supreme Court considered the trial court's role with respect to the giving of withdrawal instructions, holding:

> If defendant wished to withdraw from the jury's consideration items for which the record provided no basis for plaintiff's recovery, a correct withdrawal instruction should have been submitted.... Therefore, the trial court did not err in refusing the instruction offered and was under *no duty* either to

modify the tendered instruction or *to give a correct one of its own motion.* (emphasis added). Similarly, in *Duke v. Gulf & Western Mfg. Co.,* 660 S.W.2d 404, 417 (Mo.App. W.D.1983), the Western District held that a party who has not requested a withdrawal instruction at trial and does not raise the issue in a motion for new trial does not preserve the issue for appeal.

*Lane v. Amsted Industries, Inc.,* 779 S.W.2d 754 (Mo.App. W.D.1989) is also instructive. In *Lane,* a products liability case, plaintiff sought both compensatory and punitive damages. However, at the close of plaintiff's case the court ruled that a submissible case of punitive damages was not proven and withdrew the issue. On appeal, plaintiff contended that it was prejudiced by evidence which was admitted on the issue of punitive damages and favored defendant. The Western District recognized that a plaintiff who seeks both compensatory and punitive damages "courts befuddlement of the jury," but noted that "[t]here are aids for a litigant beset by that (sic) inherent quandary of such a litigation ...." *Id.* at 759. In words equally applicable here, the Western District rejected plaintiff's assertion of trial error:

> It was open to the plaintiff at the end of her case, when the court ruled a submissible issue of punitive damages was not proven, to seek the direction of the court to withdraw all the evidence on that abandoned issue from the jury, *and so remove the distraction of a false issue.* But none was sought. MAI 34.01 and 34.02 (1981) (citation omitted).
>
> . . .

---

5. Defendants' claim that such a holding prevents Defendants from obtaining a new trial on the basis that "the jury failed to understand, or failed to follow, the court's clear and comprehensive damage instruction" is un-

warranted. First, Defendants did not assert the jury's failure to follow the trial court's damage instruction as a basis for a new trial. Second, the trial court never found that the jury failed to follow its instructions.

The complaint of the plaintiff is that of a thwarted suitor, and not of an aggrieved party. She does not complain that the trial court refused any request for aid to confine the adjudication of the jury to the single issue for determination: the defect of the product. *Whatever confusion of issues that may have beset the jury was not the result of trial error.* *Id.* at 759–60 (emphasis added). Likewise, here Defendants did not ask the trial court to clarify the punitive damages issue with a withdrawal instruction, and accordingly, the trial court did not err in failing to provide guidance to the jury on the issue prior to deliberations.

Defendants argue, in response, that they are not challenging the trial court's failure to give a withdrawal instruction. While it is true that Defendants did not challenge the trial court's failure to give a withdrawal instruction in the Motion for New Trial, the trial court nevertheless concluded, *sua sponte,* that it erred in not providing "clear guidance" to the jury on the issue of punitive damages prior to the first verdict. That the trial court did not denominate "clear guidance" as a withdrawal instruction is irrelevant. The only permissible method for communicating such guidance is through either an MAI 34.02 [2002] withdrawal instruction or a limiting instruction. *See* MAI Committee Comment 34.02 ("While MAI 34.02 is called a 'withdrawal instruction', its use is not limited to withdrawing evidence which is accidently (sic) or improperly admitted. It is intended rather to clarify what the jury is to consider in assessing damages.").

Defendants cannot escape the consequences of their failure to request a withdrawal instruction by relying on the trial court's well-intentioned misunderstanding of its role with respect to withdrawn issues. Even if Defendants had raised the trial court's failure to give the jury "clear guidance" on the status of punitive damages, as the trial court concluded it was required to do, the trial court erred in granting a new trial on this basis where Defendants failed to request a withdrawal instruction. *See Meyer,* 856 S.W.2d at 907 (instructional error involves a question of law).

 The second basis for grant of the Motion for New Trial—failure to properly ascertain jury intent with respect to the first verdict—also constitutes error. Surprisingly, Defendants argue that the trial court's concern with its perceived deficiencies in ascertaining jury intent is not a basis for the grant of a new trial. A fair reading of the Order reveals otherwise.

First, the trial court explicitly found that it erred in the handling of the jury's two verdicts. In explaining how it erred with respect to the first verdict, the trial court stated:

> In retrospect and after reviewing the case law and the particular circumstances of this case, the Court now believes that, to determine the true intent of the jury's first verdict, it should have asked each of the nine jurors who signed the first verdict form one or two open-ended questions about what the explanatory language on the form meant. Then, with this direct and clear information about the jurors' intentions in hand, the Court would have been much better equipped to determine the meaning of the jury's first award of damages and to enter an appropriate order based on the Court's clear understanding.

Further explaining its error, the trial court stated, the "Court believes that it could have asked the foreperson what the additional line in the damage verdict meant without drawing specific attention to the 'punitive' part of that line. The Court would then have had a straightforward

explanation of the jury's intent and could have proceeded accordingly."

■ The trial court's belief that it erred when it failed to question jurors to obtain the "true intent of the first verdict" again reveals a misunderstanding of the applicable law. In determining juror intent, the focus should be on the verdict itself, not the jurors. Thus, "it has been stated that the courts will construe a verdict liberally in an effort to ascertain the jury's intent. (citation omitted). And, of course, the court considers a verdict to see if it can find a reasonably clear intent *expressed therein*, though perhaps inartfully expressed." (citation omitted). *Thorne v. Thorne*, 350 S.W.2d 754, 757 (Mo.1961) (emphasis added).

The manner in which the trial court ascertained the jury's intent with respect to the first verdict was proper and the trial court misapplied the law in, *sua sponte*, finding that it erred. Here the trial court reasonably found that the first verdict contained an inconsistency and refused to accept it. The trial court then followed our admonition in *St. Francis Medical Center v. Sheffer*, 892 S.W.2d 394, 396 (Mo.App. E.D.1995): "[i]f a verdict is found to be ambiguous, inconsistent, or otherwise defective, the jury should be given the opportunity to correct the verdict or to find a new one before such verdict is recorded and made part of the judgment." Thereafter, the trial court carefully refrained from any interaction which would influence the jury's final determination and "simply re-quired the jury to return to reconsider its [verdict] after the inconsistency or defect was brought to the jury's attention." *Van Eaton v. Thon*, 764 S.W.2d 674, 677 (Mo. App. W.D.1988).

■ The trial court's third ground— the failure to confidently eliminate the possibility that the jury's second verdict was free from punishment — also fails as a proper basis for grant of the new trial. The third ground highlights the trial court's obvious discomfort with its inability to discern the mental processes of the jury with respect to the second verdict. The trial court's concern is exemplified by a rhetorical question it posed in the Order: "Did the jury rethink its award of damages in light of the Court's special instruction or did it simply read that instruction as a hint from the Court, 'don't use the word "punitive" next time?'" In its Order, the trial court further concluded that it lacked confidence that the jury eliminated any "punitive element" from the damages it awarded. In addition, the trial court stated that it was left with "substantial doubt that the jury's damage determination represented actual damages only." Importantly, the trial court made no findings that the jury was prejudiced, that the jury failed to follow instructions[6] or that the second verdict was ambiguous, inconsistent or defective. Significantly, contrary to Defendants' assertion on appeal, the trial court did not find that the second verdict contained, to use Defendants' term,

---

**6.** Both parties appear to believe that implicit in the trial court's decision is a determination that the jury failed to follow the court's additional instruction read prior to the second verdict. Because the trial court never made such a finding we decline to consider this issue. We note, however, that in the context of withdrawal instructions, "there is a presumption that the jury follows its instructions." *Lohmann v. Norfolk & W. Ry. Co.*, 948 S.W.2d 659, 665 (Mo.App. W.D.1997).

Only where the circumstances are exceptional may a trial court conclude that a withdrawal instruction is not adequate to overcome the effect of prejudicial material introduced in a case. *Id.; See also Shop 'N Save Warehouse Foods, Inc. v. Soffer*, 918 S.W.2d 851 (Mo. App. E.D.1996) (no exceptional circumstances overcome presumption that jury followed withdrawal instruction). No such finding was made here.

"punitive amounts." Rather, the trial court relied on its inability to obtain answers about the jury's mind-set as a rationale for granting a new trial.

 In relying on its questions about the jury's mental processes, the trial court again misconceived its role. It is well-settled that a juror "may not have his mental processes and innermost thoughts put on a slide for examination under the judicial microscope." *Baumle v. Smith,* 420 S.W.2d 341, 347 (Mo.1967). As the court held in *Johnson v. Girvin's Estate,* 370 S.W.2d 163, 167 (Mo.App. S.D.1963):

> ... the attempt by a court to *surmise* what a jury intended, ignoring what it plainly said, is a dangerous intrusion upon the fundamental and traditional concept which is a part of the bone and gut of our law, to wit, that the jury is supreme in determining questions of fact. Thus we have said that we may not speculate upon what a jury meant by what it said.

(emphasis in original). *See also Trimble v. Pracna,* 51 S.W.3d 481, 504 (Mo.App. S.D. 2001) ("Courts are not afforded the luxury of speculating that the jury meant to do other than what it did"). Because the second verdict was not defective, ambiguous or inconsistent, the court erred in analyzing the jury's intent and subsequently granting a new trial because it was unable to discern, to its satisfaction, the jury's intent.

### C. Alternative Grounds

 Defendants correctly contend, relying on *Laclede Inv. Corp. v. Kaiser,* 541 S.W.2d 330, 333 (Mo.App. E.D.1976), that this Court may consider other grounds raised in the Motion for New Trial in support of the grant of a new trial. To prevail, Defendants have the burden of demonstrating that one of the grounds preserved in their Motion for New Trial is a proper basis for the grant of the new trial. *In re Care of Coffman v. State of Missouri,* 92 S.W.3d 245, 251 (Mo.App. E.D.2002). On appeal, Defendants have advanced as grounds for a new trial four trial court errors contained in their Motion for New Trial: (1) Plaintiff counsel's comment in closing argument regarding Ms. Mullins, (2) Juror Dotson's nondisclosure during voir dire, (3) admission of other similar incidents and the Koziatek affidavit, and (4) cumulative error.

 Defendants argue that a comment Plaintiff's counsel made about Ms. Mullins, a defendant and driver of the vehicle in which D.J. was injured, during closing argument was inflammatory and prejudicial. Defense counsel objected to the comment and the objection was sustained. Defendants did not request a mistrial. The trial court considered the remark in its Order and concluded it was not sufficiently prejudicial to support a new trial. Having received the relief they asked for at trial and having failed to request a mistrial, Defendants may not now premise their demand for a new trial on this statement. *Welch v. Burlington N. R.R. Co.,* 807 S.W.2d 226, 228 (Mo.App. E.D.1991).

 Defendants also argue that Juror Dotson's failure to disclose a 1985 auto accident denied them their right to a fair trial. The trial court determined that due to the remoteness of the 1985 accident and the small amount recovered in a subsequent lawsuit, the nondisclosure was unintentional. The determination of whether a nondisclosure is intentional is left to the discretion of the trial court. *Toppins,* 983 S.W.2d at 589. Where the experience of the juror is insignificant, remote in time, or when the juror reasonably misunderstands the question, failure to disclose the experience is unintentional. *Grab ex rel. Grab v. Dillon,* 103 S.W.3d 228, 243 (Mo. App. E.D.2003). We also note that where,

as here, there is a significant dissimilarity between the undisclosed information and the issue being litigated, the inference of bias and prejudice decreases. *See Grab*, 103 S.W.3d at 244; *Toppins*, 983 S.W.2d at 591. Under the circumstances here, the trial court's reluctance to find that Defendants were prejudiced is not an abuse of discretion.

■■■■■ Defendants also argue they were denied their right to a fair trial because the trial court allowed the admission of evidence of two prior incidents of small children ejected from the type of booster seat at issue here. Plaintiff contended that the two incidents were offered to establish notice to Defendants on the inability of the product in question to restrain children who weighed less than forty pounds. As we have held, "[e]vidence of other accidents may be relevant (1) to prove the existence of a particular physical condition or defect, (2) to show that the defect or dangerous situation caused the injury, (3) to show the risk that defendant's conduct created, and (4) to prove that defendant had notice of the danger." (citation omitted). *Govreau v. Nu-Way Concrete Forms, Inc.*, 73 S.W.3d 737, 741–42 (Mo.App. E.D.2002). Where the evidence is offered to establish notice, "the degree of similarity . . . is less demanding than the similarity required to show that the same accident occurred on the occasion in issue." *Id.* at 742. In determining the similarity between the incidents, "we give the trial court wide latitude in determining whether such evidence is relevant and whether the circumstances bear sufficient resemblance to those that caused the injury at issue." *Id.*

The trial court held a lengthy evidentiary hearing on the record to consider whether to admit other similar incident evidence. After considering a number of incidents, the Court admitted two. Both incidents involved the product at issue and involved children of the same approximate weight who were not restrained by the product. The trial court specifically considered the possibility of confusion. Because the record reveals that the trial court determined both the relevance of the proffered evidence, and whether it bore sufficient similarity to the incident in question and properly weighed confusion and prejudice, we decline to find an abuse of discretion in the admission of the challenged evidence.

■■■■■ Defendants also challenge the trial court's admission of a redacted affidavit executed by Jerome Koziatek, Defendant Evenflo's former Director of Product Development, in connection with previous Evenflo litigation. Defendants argue that the Koziatek affidavit did not concern the booster seat at issue and therefore was not probative. Plaintiff responds that Mr. Koziatek's affidavit directly contradicts Defendants' central position that the shield used in the booster seat in question provided adequate restraint. The trial court considered the issue of the Koziatek affidavit at length and allowed Plaintiff to use the affidavit of Mr. Koziatek on cross-examination and as a prior inconsistent statement.

■■■■■ The extent and scope of cross-examination is within the discretion of the trial court. *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 60 (Mo. banc 1999). Where, as here, the declarant is available for cross-examination, a prior inconsistent statement may be used as substantive evidence. *Rowe v. Farmers Ins. Co., Inc.*, 699 S.W.2d 423, 425 (Mo. banc 1985). Given that the adequacy of the booster seat's shield was a major issue in the litigation and given that Mr. Koziatek was involved in the early development of booster seat shields for Evenflo, we see no abuse of discretion in the admittance of the redact-

ed Koziatek affidavit or its use in cross-examination of Mr. Koziatek.

Finally, because we find no error, Defendants' last contention, cumulative error, cannot support a new trial. *Crawford*, 91 S.W.3d at 652. *See also Nelson v. Waxman*, 9 S.W.3d 601, 608 (Mo. banc 2000), *citing Shepherd v. State*, 529 S.W.2d 943, 948 (Mo.App.1975) ("Any number of non-errors cannot add up to an error.").

## CONCLUSION

Based on the foregoing, the trial court's Order granting a new trial is reversed and the cause is remanded for reinstatement of the judgment in accordance with the second verdict.

BOOKER T. SHAW, P.J., Concurs.

LAWRENCE G. CRAHAN, J., Concurs in separate opinion.

LAWRENCE G. CRAHAN, Judge, concurring.

I concur fully in Judge Cohen's comprehensive opinion. It is troubling, however, to reinstate a verdict that the trial judge, who is obviously in the best position to observe, has "substantial doubt" represents the jury's determination of actual damages only. I write separately simply to observe that the questions of whether the original verdict was ambiguous and whether the trial court should have simply entered judgment for $4.5 million as indicated by the jury in that judgment are not before us in this appeal.[1]

---

1. Defendants did not file a cross-appeal of the denial of their motion for J.N.O.V. because, under established case law, they were not "aggrieved" by the judgment granting their

motion for new trial. *See Schlemer v. Connell Agencies of Kimberling City, Inc.*, 741 S.W.2d 307, 309 (Mo.App.1987).